**UNITED STATES of America, Plaintiff,**

v.

**OUTBOARD MARINE CORPORATION, et al., Defendants.**

**No. 78 C 1004.**

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1982.

MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This water pollution suit is before the court on the motion of defendant Outboard Marine Corporation ("OMC") to dismiss Count IV of the Second Amended Complaint. For the reasons stated below, OMC's motion to dismiss is denied.

This suit arises out of OMC's alleged discharges of polychlorinated biphenyls ("PCBs") into navigable waters surrounding OMC's Waukegan, Illinois facility. In Count IV the Government alleges that OMC is the owner of a facility from which a hazardous substance has been or may be released, and that the Environmental Protection Agency ("EPA") has determined that such release creates an imminent and substantial endangerment to public health or welfare or the environment. Based on these allegations the Government seeks in-

junctive relief under Section 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a).

OMC moves to dismiss on the grounds that Section 106(a) is merely jurisdictional, not substantive; that certain administrative prerequisites to action under Section 106(a) have not been carried out; and that the Government does not allege an emergency of the sort to which Section 106(a) is directed.

CERCLA was enacted in 1980 primarily to set up a Superfund for Government responses to hazardous substance releases. Section 104, 42 U.S.C. § 9604, authorizes Government responses to these releases. Section 105, 42 U.S.C. § 9605, calls for revision of the National Contingency Plan originally formulated to guide Government responses under Section 311 of the Clean Water Act, 33 U.S.C. § 1321. Section 107 holds certain parties liable to the Government for reimbursement of its response expenses, and provides for limited liability for damages to natural resources. Section 106(a), under which the Government brings Count IV, reads as follows:

> In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

Section 106(b), 42 U.S.C. § 9606(b), authorizes fines for failure to comply with orders

issued under § 106(a). Section 106(c), 42 U.S.C. § 9606(c), calls for the establishment of guidelines for the exercise of the imminent hazard authority conferred by Section 106(a) and by other similar statutes.

The United States has directed the court's attention to one recent case interpreting relevant provisions of CERCLA. *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100 (D.Minn.1982). Also, both parties have produced cases construing the similar imminent hazard authority conferred by Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973. OMC has cited *United States v. Midwest Solvent Recovery, Inc.,* 484 F.Supp. 138 (N.D.Ind.1980), and *United States v. Solvents Recovery Services,* 496 F.Supp. 1127 (D.Conn.1980), for its argument that Section 106(a) is only jurisdictional in nature. The Government relies on *United States v. Diamond Shamrock Corporation,* No. C80–1857 (N.D.Ohio, May 29, 1981), which cites *United States v. Vertac Chemical Corp.,* 489 F.Supp. 870 (E.D.Ark.1980), to show that Section 106(a) also is substantive in nature. The lone case construing Section 106(a) itself, *Reilly Tar,* appears to read Section 106(a) as a substantive statute.

The court understands the distinction between "substantive" and "jurisdictional" to be the distinction between a statute that creates liability and one that authorizes remedies or proceedings but does not create liabilities. Read plainly, Section 106(a) does not appear to create liability in any party. It authorizes lawsuits and injunctions, but it does not indicate who may be sued or enjoined; also, it does not specify what one must do to be subject to suit or injunction. *Reilly Tar,* treating Section 106(a) as substantive, relies on the statutory reference to "the public interest and the equities of the case" (as well as on some principles of the federal common law of nuisance) in determining the reach of Section 106(a) as a liability-creating provision. 546 F.Supp. at 1113–1114. *Solvents Recovery,* treating the analogous Section 7003 of RCRA as jurisdictional only, looks to the federal common

law of nuisance for standards to be applied in a Section 106(a) action. 496 F.Supp. at 1133–34. *Midwest Solvent* also looks to common law, though not specifying the federal common law of nuisance. 484 F.Supp. at 143–44. (*Solvents Recovery* and *Midwest Solvent,* but not *Reilly Tar,* were decided before *Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) ("Milwaukee II"), declared that the federal common law of nuisance had been preempted in the area of water pollution.)

Although Congress might well have envisioned that Section 106(a) would be applied with reference to the standards of the federal common law—or at least to some aspects of that body of law—the broad pronouncements of *Milwaukee II* make the court reluctant to read Section 106(a) in this way. OMC, while protesting that Section 106(a) is only jurisdictional, does not direct the court to any substantive body of law to be applied under Section 106(a). The United-

ed States, while not suggesting that Section 107 of CERCLA is the sole substantive basis for Section 106(a) actions, does note that OMC appears to be within the class of persons liable under Section 107, which is the central liability-creating provision of CERCLA.

Under Section 107[1], "the owner ... [of] a facility ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable" for response costs and certain damages. 42 U.S.C. § 9607(a). OMC is the owner of a facility from which there has been a release of a hazardous substance. Because the Government is suing for a cleanup injunction, rather than cleaning up and suing for costs, OMC's release has not generated response costs; if the Government had elected to undertake necessary removal actions and then sued to recover its costs, OMC would fit squarely within this provision.[2]

---

1. Section 107(a) reads as follows:

(a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ·

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the

reasonable costs of assessing such injury, destruction, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

2. In its reply brief OMC argues that the Government cannot have stated a claim under CERCLA because no release levels for PCBs were prescribed under 33 U.S.C. § 1321(b)(4) until after this case was filed. This argument rests on Section 101(32) of CERCLA, 42 U.S.C. § 9601(32), which defines "liable" and "liability" as "the standard of liability which obtains under section 1321 of Title 33." This argument does not avail OMC. First, it is not clear that prescribed release levels must be exceeded before liability under CERCLA will attach. "Release" is defined by Section 101(22) as "*any* spilling, leaking, pumping, pouring," etc. (emphasis added), and neither Section 106 nor Section 107 refers to prescribed release levels. Only notification requirements are tied explicitly to prescribed release levels. Section 103, 42 U.S.C. § 9602(b). Even assuming that OMC's reading is correct, Section 102(b) of CERCLA provides that where no release levels have been prescribed, the release level shall be one pound. 42 U.S.C. § 9602(b). The Government has not alleged that any particular quantity of PCBs was released, but the court will accept as sufficient, should the Government indeed be required to allege that the release level was exceeded, the allegations that "large amounts of PCBs" were discharged from 1959 until at least 1972.

This court is hesitant to rely only on "the public interest and the equities of the case" in determining the reach of Section 106(a). Recourse to the federal common law of nuisance seems to be foreclosed by *Milwaukee II.* On the other hand, Congress included this imminent hazard authority in its CERCLA design, and it should be given effect. Section 107, the main liability-creating provision of CERCLA, indicates that OMC is well within the class of those whom Congress intended to hold responsible under CERCLA. Whatever the source of the substantive law to be applied in a 106(a) action, it is most probable that those who would be liable under Section 107 were intended to be liable in an action under 106(a) for injunctive relief.

Section 106(a) does carry certain substantive requirements, however, and it is not questioned that these must be met before relief can issue. Specifically, Section 106(a) authorizes action only when the President has determined "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." The Second Amended Complaint alleges that authority to make this determination has been delegated and redelegated to the EPA, and that a determination of imminent and substantial endangerment has been made in this case. OMC attacks the method in which this determination has been made, but on a 12(b)(6) motion the Government's allegations must be taken as true.

A related question is whether in fact an imminent and substantial endangerment has been alleged. A strict reading of Section 106(a) might include that the President's—or his delegate's—determination is all that must be alleged, but there must remain in the court some power to determine independently whether Section 106(a) properly may be invoked. The Second Amended Complaint does allege an imminent and substantial endangerment, but only in a most conclusory way. The release of large amounts of PCBs is alleged, but the United States does not allege, for instance, any particular kind of illness or damage that the accumulated PCBs may cause in the near future.

The Government has stressed that the phrase "imminent and substantial endangerment" has been read broadly by courts. In *Reilly Tar* the court refused to dismiss a Section 106(a) action based on discharges occurring over fifty-five years. The United States had made fairly detailed allegations as to the types of harm which might be caused. 546 F.Supp. at 1105–1106. Cases interpreting Section 7003 of RCRA also have given this language a broad reading. In *United States v. Hardage,* No. CIV–80–1031–W (W.D.Okla Dec. 2, 1980), the court held this requirement satisfied where released substances posed "a direct, if not immediate, threat to human health and the environment." In *United States v. Vertac Chemical Corp.,* 489 F.Supp. 870 (E.D.Ark. 1980), waste disposal practices over a twenty-five year period satisfied the statutory requirement, the court noting that the adverse health effects of the released substances were not yet agreed upon by the medical community. OMC argues that the Government does not allege an emergency of the sort to which Section 106(a) is directed, and it is true that *Reilly Tar* and *Hardage* express concern that Section 106(a) not be used to circumvent other provisions directed at long-term pollution problems. In the final analysis, however, these courts did not dismiss the Government's claims. In this case, more specific allegations as to the types of danger presented would have been helpful, but this point of law is not yet developed to the extent that the court can state with confidence that the Government's allegations are insufficient.

The court likewise rejects OMC's argument that action under Section 106(a) is improper until the revised National Contingency Plan and imminent hazard authority guidelines required by CERCLA have been published. Sections 105 and 106(c), 42 U.S.C. §§ 9605, 9606(c). Since this motion was briefed, these have been published. 47 Fed.Reg. 31180–243 (July 16, 1982); *id.* at 20664–67 (May 13, 1982). Even had these not yet been published, OMC's argument would be unpersuasive. The court does not believe that Section 106(a) authority was

intended to be dormant until a new Plan and guidelines were published.

*Environmental Defense Fund v. Gorsuch*, No. 81–2083 (D.D.C.Feb. 12, 1982), relied upon by OMC, does not support OMC's position, and actually suggests the contrary conclusion. In that case the Director of the EPA was sued because of the EPA's failure to publish the revised Plan and guidelines. The EPA argued that a new Plan and guidelines were not necessary, because CERCLA was being administered effectively under the existing regulatory framework. Judge Pratt rejected this defense, saying that this did not excuse EPA's failure to carry out its mandate from Congress; he did not suggest that action under CERCLA was illegal until the revised Plan and guidelines had been published. Further, this court's independent reading of Sections 105 and 106 convinces it that publication of a revised Plan and guidelines was not intended to be a prerequisite to action under CERCLA.[3]

OMC's motion to dismiss Count IV of the Second Amended Complaint therefore is denied.

It is so ordered.

**3.** As this opinion was being put into final form, the court discovered a recent case construing Section 106(a). *United States v. Wade*, 546 F.Supp. 785 (E.D.Pa.1982). In this litigation the United States is suing under Section 106(a) and Section 7003 RCRA to enjoin certain parties to clean up a hazardous waste site. In the opinion of September 7, the court dismissed the action against Gould, Inc., a firm which in the past had generated chemical wastes disposed of at the site.

To some extent Wade can be distinguished, as the court stresses that Gould did not own the site, but merely had generated wastes disposed there. For instance, the court emphasizes that Gould, not owning the site, cannot be enjoined to clean it up; as against such a third party, a suit purportedly for injunctive relief necessarily becomes a suit for money damages. In large part, though, the court's reasoning cannot be reconciled with the views expressed here and by the district court in *Reilly Tar*. The court in *Wade* holds that Section 106(a) and Section 7003 of RCRA do not authorize injunctions to clean up past discharges. The court reads the sections as relating solely to future discharges, and accepts as controlling the argument that the great detail of Section 107 precludes use of Section 106(a) to attack

past pollution. *Wade* thus gives a more restrictive reading to imminent hazard authority provisions than do the cases discussed above.

OMC has delivered to the court a copy of *Wade* and a cover letter discussing *Wade* and *Reilly Tar*. OMC distinguishes *Reilly Tar* from the present case on the basis that in *Reilly Tar* a Section 107 claim also was brought; thus, OMC argues, there was no circumvention of Section 107. The court rejects this argument. That some response costs were incurred and sued for does not change the fact that the court in *Reilly Tar* held Section 106(a) to authorize injunctive cleanup relief, apparently of the kind sought here. If to grant such relief under Section 106(a) involves circumvention of Section 107, as OMC contends, then it would seem that Section 107 was circumvented in *Reilly Tar* to the extent injunctive cleanup relief was sought under Section 106(a). *Reilly Tar* is not clear as to exactly what cleanup relief was sought under Section 107 and what under Section 106(a), but some indication is given by the court's holding that *past* owners can be liable under Section 106(a); this would not be an issue, presumably, if the relief sought under Section 106(a) was not directed toward past discharges.