**UNITED STATES of America, Plaintiff,**

v.

**CONSERVATION CHEMICAL COMPANY, Norman B. Hjersted, Conservation Chemical Co. of Illinois, Armco Steel Corporation, FMC Corporation, International Business Machines Corp., Western Electric Company, Inc., Mobay Chemical, Defendants.**

No. 82–0893–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

Feb. 3, 1984.

Kenneth Josephson, Asst. U.S. Atty., Kansas City, Mo., John R. Barker, Environmental Enforcement Section, Land Natural Resource Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Niewald, Waldeck, Norris & Brown, Terry L. Karnaze, Michael Waldeck, Kansas City, Mo., for defendants Conservation Chemical, Norman B. Hjersted, and Conservation Chemical of Illinois.

Martin J. Purcell, Stanley Reigel, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendant Armco, Inc.

John M. Kilroy, Jr., Thomas F. Fisher, Shughart, Thomson & Kilroy, Kansas City, Mo., for defendant FMC Corp.

James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Allan J. To-pol, Covington & Burling, Washington, D.C., for defendant IBM Corp.

Jerome T. Wolf, Carl H. Helmstetter, Spencer, Fane, Britt & Browne, Kansas City, Mo., John A. McKinney, Jr., Alan R. Chesler, New York City, for defendant AT & T Techn., Inc. (formerly Western Electric).

Stephen Jacobson, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo., for defendant Mobay Chemical.

## ORDER

SCOTT O. WRIGHT, District Judge.

The United States has brought this civil action to obtain injunctive relief in order to remedy a situation alleged by the government to present an imminent and substantial danger to public health and the environment caused by groundwater contamination from hazardous substances at the chemical disposal site of defendant Conservation Chemical Company ("CCC"). The suit seeks relief against the owner of the disposal site, CCC, and four generators (Armco, FMC, IBM and Western Electric) who allegedly sent hazardous waste to the site. This action is based on Section 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6973,[1] and Section 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. 9606(a).[2] In

---

1. 42 U.S.C. § 6973(a) provides:

Notwithstanding any other provision of this chapter, upon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person contributing to such handling, storage, treatment, transportation or disposal to stop such handling, storage, treatment, transportation, or disposal or to take such other action as may be necessary. The Administrator shall provide notice to the affected State of any such suit. The Administrator may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and the environment.

2. 42 U.S.C. 9606(a) provides:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

addition, the government seeks reimbursement of investigatory costs incurred at the disposal site pursuant to CERCLA § 107 and RCRA § 1007. Pending before the Court are motions to dismiss filed by the defendant generators, all of which will be denied. Although the Court will not address at this time all of the numerous arguments raised by the defendants in support of their motions, the Court makes the following determinations.

The government has made the following allegations in this case. The hazardous waste and disposal site which is the subject of this action has been owned and operated by CCC since 1960, and has been used since then to store or dispose of hazardous substances. From approximately 1960 to 1979, hazardous substances were deposited in several surface impoundments located at the site. These impoundments were either unlined or improperly lined, were from twenty to thirty feet deep, and were excavated down to the water table. The impoundments were enlarged and additional impoundments were constructed as more disposal capacity was desired. Hazardous wastes were dumped into the impoundments directly from trucks, pumped from tank trucks, and deposited in drums and other containers, including bulk storage tanks. At times, the hazardous substances overflowed the impoundments or were spilled at the site. Water sampling performed by the government in 1980 revealed groundwater contamination at the Conservation Chemical site and on adjoining property. Armco, FMC, IBM and Western Electric are corporations which arranged for the disposal of hazardous substances generated by them at the Conservation Chemical site.

█ In support of their motion to dismiss, the defendant generators urge this Court to follow *United States v. Wade*, 546 F.Supp. 785 (E.D.Pa.1982), in which the District Court ruled that CERCLA § 106 and RCRA § 7003 are not applicable to non-negligent off-site generators of hazardous wastes. In making its determination, the Court in *Wade* noted that no court at

that time had construed § 7003 to be applicable to past off-site generators, and that there was nothing in the statutory language or the legislative history "that would authorize such a considerable extension of liability." *Id.* at 790. Regarding CERCLA § 106, the *Wade* court concluded that although CERCLA § 107 clearly includes past generators of hazardous waste among those potentially liable to be used for clean-up costs incurred under CERCLA § 104, CERCLA § 106 may not be used to confer liability on non-negligent past off-site generators of hazardous wastes because, in the *Wade* court's opinion, Congress intended § 106 to be used in emergency situations where hazardous waste was currently being discharged or threatened to be discharged from a facility and where such discharge could be stopped by an injunction. *Id.* at 794.

This Court, however, is in agreement with the reasoning and holding of *United States v. Price*, 577 F.Supp. 1103 (D.N.J. 1983), in which the District Court ruled that "CERCLA § 106 was intended and should apply to past off-site generators if the circumstances indicate an 'imminent and substantial endangerment.'" At 1112. The court in *Price* expressly disagreed with both the reasoning used and the result obtained in *Wade*. In *Price*, the District Court noted that the *Wade* court construed § 106(a) in the same narrow manner that it construed § 7003 even though the imminent hazard provisions of § 106(a) are even broader than those articulated in § 7003. *See United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1111 (D.Minn. 1982). The court in *Price* also pointed out that the *Wade* decision was prior to the Third Circuit's decision in *United States v. Price*, 688 F.2d 204 (3d Cir.1982), in which the court held that § 7003 could be applied to a dormant site if it poses a current threat to the environment or to public health. The district court in *Price* also noted that two cases, *United States v. Reilly Tar, supra*, 546 F.Supp. 1100, and *United States v. Outboard Marine Corp.*, 556 F.Supp. 54 (N.D.Ill.1982), held that the government could bring an action against

the owner of the dump site under § 106 even though the site was no longer active. The court in *Outboard Motor* observed that the *Wade* court's reasoning "cannot be reconciled with the views expressed here and by the district court in *Reilly Tar.*" *United States v. Outboard Motor, supra,* 556 F.Supp. at 58.

Regarding RCRA § 7003, this Court will follow the ruling of the District Court in *Price* with respect to that section. The *Price* court observed that it "appears from the language of CERCLA and the accompanying legislative history, that Congress passed the statute in response to recognized deficiencies in RCRA . . . . One of the most frustrating problems with RCRA, was its perceived failure to take into account past, off-site generators who hired third parties to dump their waste. . . ." *United States v. Price, supra,* at 1114 n. 12a. The *Price* court found it unnecessary to decide whether the generators could be held liable under other statutes such as RCRA § 7003, because it had concluded that past off-site generators can be liable for clean-up costs under CERCLA. *Id.* Accordingly, at this time the Court makes no comment on the issue of generator liability under § 7003, and recognizes that the issue may arise at a future date in this litigation.

The defendant generators next argue that the government has failed to state a cause of action under CERCLA § 106 in that the government has not alleged that the generators acted negligently. This Court, however, will again follow the District Court's decision in *Price* which held that past off-site generators should be held to a standard of strict liability. The court in *Price* noted that " 'Congress included this imminent hazard authority [§ 106] in its CERCLA design and it should be given effect. . . . Whatever the source of the substantive law to be applied in a 106(a) action, it is most probable that those who would be liable under Section 107 were intended to be liable in an action under 106(a) for injunctive relief.' " *United States v. Price, supra,* at 1113, quoting

*United States v. Outboard Marine, supra,* 556 F.Supp. at 57. The *Price* court went on to conclude that the proper standard was strict liability because Congress intended to impose a strict liability standard subject only to the affirmative defenses listed in § 107(b). This conclusion, the *Price* court noted, is reinforced in that Congress left the "due care" defense [3] in the statute, a defense that would be meaningless in the absence of strict liability. This Court is in agreement with the *Price* court's assertion that the strict liability standard is more consistent with the legislative aims of CERCLA which include goals such as the spreading of costs and the assurance that responsible parties bear the cost of the clean-up. "The fulfillment of these Congressional goals is more likely to be effectuated if the defendants who allegedly contributed to the environmental mess are now held to a very stringent standard of liability. Though strict liability may impose harsh results on certain defendants, it is the most equitable solution in view of the alternative—forcing those who bear no responsibility for causing the damage, the taxpayers, to shoulder the full cost of the clean-up." *United States v. Price, supra,* at 1114. Accordingly, the defendant generators' motions to dismiss on the ground that the government has failed to allege negligent conduct will be denied.

■ The generators next contend that joint and several liability is inapplicable in this action, as such liability is not provided for by RCRA, CERCLA or common law. A similar issue was before the District Court in *United States v. Chem-Dyne Corp.*, 572 F.Supp. 802 (S.D.Ohio, 1983), in which the government brought an action under CERCLA § 107 for reimbursement of Superfund money expended to institute remedial action. This suit was brought against 24 defendants who allegedly generated or transported hazardous substances. The defendants then moved for an early determination that they were not jointly and severally liable for the clean-up costs. The court in *Chem-Dyne* noted that the deletion

---

**3.** CERCLA § 107(b)(3), 42 U.S.C. § 9607(b)(3).

of the term "joint and several liability" from a prior draft of the legislation is not dispositive of the scope of liability under CERCLA, and that a "reading of the entire legislative history in context reveals that the scope of liability and term joint and several liability were deleted to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases." *United States v. Chem-Dyne, supra,* at 808. According to the *Chem-Dyne* court, the deletion was not intended as a rejection of joint and several liability, rather, the term was omitted in order to have the scope of liability determined by the court in a case-by-case evaluation. The *Chem-Dyne* court recognized the common law rule that when two or more persons acting independently cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm he caused, but where two or more individuals cause a single and indivisible harm, each is subject to liability for the entire harm. *Id.* at 811. Therefore, the analysis applicable to the instant case, as stated by the *Chem-Dyne* court, is that where the conduct of two or more persons liable under CERCLA has combined to violate the statute, and one or more of the defendants seeks to limit his liability on the ground that the entire harm is capable of apportionment, the burden of proof as to apportionment is upon each defendant.

▪ Defendants Western Electric and Armco have moved for dismissal because of the government's failure to join at least 46 other contributing generators as indispensable party defendants under F.R.C.P. 19. The Rule 19 definition of persons to be joined "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability. . . .

Joinder of these tortfeasors continues to be regulated by Rule 20; compare Rule 14 on third-party practice." F.R.C.P. 19 Advisory Committee note. In *United States v. Price, supra,* an action was brought pursuant to § 7003 against the owners of a landfill for injunctive relief to remedy hazards created by chemical dumping. The owners moved to compel the joinder of the chemical companies that deposited waste in the landfill and the transporters that hauled those wastes. The Court in *Price* noted that although it agreed with the defendants that "equitable considerations support the addition of generators and transporters" as defendants, the motion for joinder must be denied because the traditional rule is that one tortfeasor may not compel the joinder of other alleged joint tortfeasors. 523 F.Supp. at 1075. *See also American Motor Inns, Inc. v. Holiday Inns, Inc.,* 521 F.2d 1230, 1244–45 n. 42 (3d Cir.1975); *Herpich v. Wallace,* 430 F.2d 792, 817 (5th Cir.1970); *United States v. Northeastern Pharmaceutical & Chemical Company, Inc.,* No. 80–5066, slip op. at 2–3 (W.D.Mo., June 11, 1981); 7 Wright & Miller, *Federal Practice and Procedure* § 1623 (1972). Therefore, defendants' Rule 19 motion will be denied.

Finally, the Court notes that the parties have made numerous arguments regarding the interpretation of the relevant statutes involved in this case in the voluminous suggestions in support of and in opposition to the motions to dismiss. To the extent that these disputes have not been resolved in this order, the arguments may be raised and considered again at later stages of this litigation. At this point, however, all pending motions to dismiss will be denied.[4] Accordingly, it is hereby

ORDERED that all motions to dismiss filed in this action are denied. In addition, in order to provide for the efficient disposition of the remainder of this litigation and to ensure compliance with Local Rule 15

---

**4.** In ruling on the motions filed in this case, the Court has had the opportunity to examine the memorandum opinion recently filed in *United States v. Northeastern Pharmaceutical and Chemical Co., Inc.,* 579 F.Supp. 823 (W.D.Mo. 1984) (Clark, J.). In that case, the government

brought an action against one generator, one transporter and one landowner pursuant to RCRA § 7003 and CERCLA §§ 104, 106(a) and 107(a), seeking injunctive relief and reimbursement of all costs incurred relating to remedial action at a hazardous waste site.

and F.R.C.P. 16 (as amended April 28, 1983, effective August 1, 1983), it is hereby

ORDERED that within twenty (20) days of the date of this order, the parties are to submit a proposed final discovery plan and scheduling order providing for:

(1) A date limiting joinder of parties;

(2) A date limiting the filing of motions to amend the pleadings;

(3) Dates limiting the filing and hearing of motions; and

(4) A date for the completion of all discovery.