UNITED STATES of America, Plaintiff,

v.

MIDWEST SOLVENT RECOVERY, INC.; Midwest Industrial Waste Disposal Company, Inc.; Industrial Tectonics, Inc.; V & E Corporation; Ernest de Hart; Edward D. Conley; Helga C. Conley; Lovie de Hart; Charles A. Licht; David E. Licht; Delores Licht; Eugene Klisiak; Jeanette Klisiak; Luther G. Bloomberg; Robert J. Dawson, Jr.; Victor Kirsch; John Kirsch; Eva Kirsch; John Miletich; and Mary Miletich, Defendants.

Civ. No. H 79–556.

United States District Court,
N. D. Indiana,
Hammond Division.

Jan. 31, 1980.

Erica L. Dolgin, Atty., Hazardous Waste Section, Land and Natural Resources Div., Dept. of Justice, Washington, D. C., Michael R. Berman, Atty., U. S. Environmental Protection Agency, Region V, Chicago, Ill., Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for the U. S.

David E. Licht, New York City, for defendants David Licht, Charles A. Licht, Delores Licht and Industrial Tectonics, Inc.

Melvin Morris, East Chicago, Ind., for defendant Robert J. Dawson, Jr.

Leo A. Ostrowski, Griffith, Ind., for defendants Eugene and Jeanette Klisiak.

William J. O'Connor, Hammond, Ind., for defendants V & E Corp., Victor Kirsch, John Kirsch and Eva Kirsch.

Lowell E. Enslen, Gary K. Matthews, Hammond, Ind., for defendant Luther Bloomberg.

## ORDER

McNAGNY, District Judge.

Insisting that immediate relief is mandated by Section 7003 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6973, the government brings this matter before the Court by motion for a preliminary injunction. Jurisdiction over this cause, the government asserts, is vested in the Court both by 42 U.S.C. § 6973 and by 28 U.S.C. § 1345. The government questions the propriety of the waste storage and disposal activities that either previously have been carried on or presently are being conducted at two localities within the territorial jurisdiction of the Court. The Court is urged to find that conduct on the part of defendants amounts to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, that such conduct is presently an imminent and substantial endangerment to health or the environment, and that as a consequence equitable relief should be immediately forthcoming.

On December 27, 1979, the government obtained a temporary restraining order against the defendants V & E Corporation, Victor Kirsch, and Eva Kirsch, by the terms of which said defendants were enjoined from moving certain drums and containers containing chemical residues which were located on or adjacent to property owned by defendant V & E Corporation. The temporary restraining order was issued by Judge Grant of the Northern District of Indiana. This Court heard oral argument on the government's motion on January 7, 8 and 9 of 1980. No effectual service has yet been made on defendants Earnest de Hart, Lovie de Hart, Edward D. Conley, and Helga G. Conley.

### I. *Findings of Fact*

The facts are these:

1. Some time before December 1976, defendant Midwest Solvent Recovery, Inc. began to do business at 7400 West 15th Avenue in Gary, Indiana (a site hereinafter termed "Midco # 1").

2. Midco # 1 is located in an area in which a number of light industrial concerns operate. Relatively near the Midco # 1 site to the east, however, is a Gary residential area.

3. Midwest Solvent is engaged in the business of reclaiming solvents and in the business of storing and disposing of various solid and hazardous wastes. Defendant Earnest de Hart was and apparently still is a director of as well as the president of Midwest Solvent. Defendants Edward D. Conley and Helga G. Conley were and apparently still are directors of the company.

4. In the course of conducting its business, Midwest Solvent accumulated and stored thousands of 55-gallon drums on the Midco # 1 property. Many of these drums contained chemicals that were both poisonous and highly flammable.

5. Chemical waste that Midwest Solvent received was processed in simple fashion. The waste was taken onto Midco # 1, first dumped into a pit beneath a loading dock, and then dumped into a large "sludge pit," approximately 8 feet deep, 20 feet wide, and 75 feet to 100 feet long. Certain components of the waste were burned off. Much of the non-combustible portions of the waste was either stored in drums, placed in a pit, or sent to a landfill. The bulk of the remainder of the non-combustible waste was dumped onto the ground at Midco # 1.

6. In the course of operating its business, Midwest Solvent placed a large number of drums on properties adjacent to the Midco # 1 site without the permission of the properties' owners. Drums were placed without permission on the properties of Eugene and Jeanette Klisiak, of Luther G. Bloomberg, of Robert J. Dawson, Jr., and of V & E Corporation.

The government presented no evidence indicating that the Klisiaks knew of the existence of the drums upon the Klisiak property before mid-1978. At that time Mr. Klisiak hotly protested the placement of drums on his property to Mr. Dale Robinson, then plant manager at Midco # 1. Similarly, the government did not present evidence that defendant Bloomberg, defendant Dawson, or defendant V & E Corporation learned of the existence of drums on their properties until on or about the time the government filed its complaint.

7. On December 21, 1976, a fire of tremendous size broke out on Midco # 1 and in the course of the succeeding week ravaged the site. The fire consumed much of the chemical waste materials stored in the thousands of drums stacked on the ground and on each other. The fire caused the generation of toxic fumes and caused a large number of the 55-gallon drums to rocket up to 250 feet in the air. A number of Gary (Indiana) Fire Department members were injured and/or made ill in the course of fighting the fire.

8. Shortly after the fire at Midco # 1, Earnest de Hart relocated his chemical waste storage and disposal operation to a tract of land located at 5900 Industrial Highway (a site hereinafter termed "Midco # 2"). The operation was there conducted under the name of Midwest Industrial Waste Disposal Company, Inc. The Midco # 2 site was and is owned by defendants John and Mary Miletich. Mr. de Hart left Midco # 1 in the state in which the fire had left it, littered and covered with thousands of burned out drums and with chemical wastes.

de Hart conducted his business operations at Midco # 2 in much the same fashion in which he had done business at Midco # 1. Chemical wastes when received were placed in two pits near a loading dock. After the wastes congealed in the pits, the sludge product was scooped up with an earth-mover and dumped in an open pit, one of the two pits at the back of Midco # 2. This open pit became the resting place of the paint sludge. The second of the two pits at the back of Midco # 2 was a closed pit in which acids, cyanides, pesticides and other poisons were placed. Spanning the overture of the closed pit is a cover that can be easily lifted. At the rear of Midco # 2, a short distance north of the two rear pits, is a drainage ditch with a tributary channel which flows into the Grand Calumet River.

9. Defendant Lovie de Hart was and apparently still is the secretary of Midwest Industrial Waste Disposal Company, Inc. For purposes of this action, she has neither been served nor found.

10. Between the time de Hart began operations at Midco # 2 and August 16, 1977, thousands of 55-gallon drums of chemical wastes were taken onto Midco # 2 and there stored on the ground or on top of each other. On August 16, 1977, a spectacular fire erupted at Midco # 2 and fed for a number of days upon the chemical wastes stored in the thousands of drums. After the fire ran its course and eventually burned to a halt, de Hart discontinued his Midco # 2 operation, left the site, and did nothing to clean up or rehabilitate the site. de Hart moved his operation back to Midco # 1.

11. On October 19, 1977, defendant Industrial Tectonics, Inc. (hereinafter "Intec") leased for six months from Midwest Recovery Solvent, Inc. a portion of the Midco # 1 property. This lease was renewed for a second six month period on April 19, 1978. Also in the later part of 1977, Intec purchased the customer list, the logo and the telephone number of Midwest Recovery Solvent, as well as certain tanks, equipment, and vehicles. Each of these items was sold to Intec by Earnest de Hart or by one of the corporations he controlled.

12. Defendant Charles Licht is the president of Intec. Defendant David Licht is a vice-president, and a director of the company. Defendant Delores Licht is an officer and a director of the company.

13. Shortly after the acquisition of the lease, Intec began operations on Midco # 1. Chemical wastes were received and then placed in two pits. Wastes that were thought to be reclaimable were emptied into a tank beneath the loading dock and thereafter subjected to a solvent-reclaiming process. Heavy residuals were dumped into a second tank, allowed to congeal into a sludge, and then vacuummed out of the tank and taken to a large legal landfill in Calumet City, Illinois for ultimate disposition.

In the course of its operation, Intec emptied a number of drums left at Midco # 1 by Midwest Solvent Recovery, Inc. These drums contained paint sludges. The sludges were properly processed and legal disposal was made.

14. On February 24, 1978, Judge Kaul of the Lake Circuit Court in Lake County, Indiana issued an injunction ordering Midwest Industrial Waste Disposal Company, Inc. to remove and properly dispose of fire-damaged drums of cyanide and other industrial wastes located at Midco # 1 and Midco # 2. This order was never obeyed.

15. In June, 1978, the Calumet City landfill to which Intec had been bringing poisonous wastes notified Intec that it would not receive such wastes. Although Intec did notify its customers that the landfill was closed, Intec continued to take drums of wastes from its customers and to store the drums at Midco # 1. In the course of Intec's tenure at Midco # 1, the number of 55-gallon drums stored on the site has swelled by at least 4,000.

16. The temporary restraining order issued by Judge Grant and directed to defendants V & E Corporation, Victor Kirsch, and Eva Kirsch expired on January 6, 1980 at 3:00 p. m. Shortly thereafter defendant V & E Corporation moved off of its property a number of drums and containers that had been placed on its property without its permission. V & E Corporation moved certain of these drums and containers onto Midco # 1 and others onto the properties of certain of the other defendants in this cause.

17. Defendants Victor Kirsch, John Kirsch, and Eva Kirsch are officers of V & E Corporation.

18. At the present time the perimeter of Midco # 1 is not fenced, there is easy access to the site, and the site is not otherwise secured or guarded. There are presently about 14,000 or so 55-gallon drums on the site. Drums are stacked on the ground or on top of each other, two, three or four drums high. The drums are not stored inside any buildings. Thousands of the

drums were damaged in the December 21, 1976 fire. Many other drums are rusted out and/or severely corroded. A number are in good condition. Large amounts of poisonous chemical wastes have permeated much of the topsoil at the site, whether because of purposeful dumping, spillage, or fire-induced or corrosion-induced seepage. Soil sampling done at Midco # 1 by the Indiana State Board of Health revealed that much of the Midco # 1 topsoil contained inordinately high amounts of chromium, arsenic, cyanide, lead and other poisonous materials. Topsoil at Midco # 1 contains the same materials in substantially the same concentrations as it did at the time of this sampling.

In many of the drums at the site, one or several of a number of compounds are present. Among these compounds are: 2-methyldodecane, 2-methyltridecane, 2-methyltetradecane, pentadecane, undecane, xylene, methyl ethyl benzene, tetramethulbenzene, tolvene, m-cresol, and p-cresol. All of these compounds are quite flammable. Many are extremely flammable with dangerously low flashpoints.

19. Presently stacked on Midco # 2 in disarray are thousands of 55-gallon drums. The majority of these drums are fire-damaged. Other drums are badly corroded. Others are rusted to various degrees. Some drums are in good condition. At one time or another a fence has ringed the front and both sides of the Midco # 2 property. What fence that remains, however, is in such poor condition that it is not difficult for an individual to walk onto the Midco # 2 site. The site is not patrolled or otherwise secured.

An underground tank dug into the ground at Midco # 2, presently filled with liquid and sludge and having a capacity of about 30,000 gallons, contains a number of dangerous nonorganic compounds in unsafely high concentrations. Among these compounds are cyanides, arsenic, cadmium, chromium, and lead. On inadvertently exposing his arm to the contents of the tank, an employee of the United States Environmental Protection Agency suffered a burn-

ing sensation and a discoloration of his arm. The burning subsided and the discoloration disappeared when his arm was washed with detergent.

The drainage ditch running through the rear of Midco # 2 and eventually into the Grand Calumet River is polluted with arsenic and cadmium to a dangerous extent. In addition, many of the drums on the site contain cyanide residues in concentrations substantially exceeding levels that are safe. Dangerous wastes from many of these drums, moreover, are presently seeping through the drums and into and through the soil.

20. The chemical wastes that have entered and are entering the soil at Midco # 1 and at Midco # 2 and the nature of the soil at the two sites are such that the wastes have seeped and are seeping through the soil and have reached or will reach the water tables lying beneath the two sites.

21. Defendants Earnest de Hart and Lovie de Hart are both residents of Indiana. Neither de Hart can be found.

## II. Conclusions of Law

### A. Jurisdiction.

A word must first be said about jurisdiction. Section 1345 of Title 28 of the United States Code is alone sufficient to permit in this cause exercise by the Court of subject matter jurisdiction. Jurisdiction over this action is also grounded, however, by § 7003 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6973. The Administrator of the United States Environmental Protection Agency has presented evidence that the chemical wastes present on Midco # 1 and on Midco # 2 are "solid wastes" or "hazardous wastes" as those terms are defined in § 1004 of the Act, 42 U.S.C. § 6903(5) and § 6903(27), that the chemical wastes so present are the objects of "storage" and "disposal" activity as those terms are defined in § 1004 of the Act, 42 U.S.C. § 6903(33) and § 6903(3), and that the storage and disposal of the wastes at the two sites presents an imminent and substantial endangerment to the health and the environment. By such presentation, the

Administrator demonstrated that he has standing to bring this action. He has met the evidentiary tests of jurisdiction established in § 7003 of the Act.

B. *Showing Necessary to the Granting of Preliminary Injunctive Relief.*

In determining whether the government should be afforded the preliminary injunctive relief it requests, the Court is guided by common law principles and by Rule 65 of the Federal Rules of Civil Procedure.

■ The government insists that the issuance of a preliminary injunction in this case is also governed by the provisions of the Resource Conservation and Recovery Act and particularly by § 7003 of the Act. That statute provides:

Notwithstanding any other provision of this chapter, upon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste is presenting an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person for contributing to the alleged disposal to stop such handling, storage, treatment, transportation, or disposal or to take such other action as may be necessary. The Administrator shall provide notice to the affected State of any such suit. (42 U.S.C. § 6973).

By brief, the government argues that § 7003 does more than simply in certain cases confer jurisdiction upon federal district courts and standing upon the Administrator. The government claims that the statute lays down certain tests.

If these tests are met, so the argument goes, and if the government makes all of the showings deemed at common law to be prerequisites to preliminary injunctive relief, except the showing that the plaintiff would be irreparably harmed in the absence of such relief, then a preliminary injunction should issue. In effect, the government urges both that in petitions for preliminary injunctive relief jurisdictionally rooted in § 7003, a showing that activities present "an imminent and substantial endangerment to health or the environment" is sufficient and that irreparable harm to the plaintiff in the absence of preliminary injunctive relief need not be demonstrated.

The Court disagrees.

A number of factors make the construction of § 7003 more challenging than it otherwise might be. First, the legislature's explanation of the purpose and effect of § 7003 is quite sketchy. *See* H.R.Rep. No. 94–1491—Part I, 94th Cong., 2d Sess. 69 *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6238, 6308. Nor does the legislative history of § 3004 of the Act, 42 U.S.C. § 6924, a provision prescribing performance standards for owners and operators of hazardous waste treatment, storage, and disposal facilities, identify the reasons why Congress enacted § 7003. *Id.* at 24, 27–29, 56–58. Second, to the knowledge of the Court, neither the function of § 7003 nor the identity of the groups of persons who may be subject to liability under this section is discussed in any reported decision. Third, Congress prescribed that regulations be promulgated pursuant to § 3004 of the Act by the Administrator of the Environmental Protection Agency not later than April 21, 1978. 42 U.S.C. § 6924. Unfortunately, these regulations, which might aid in the construction of § 7003 of the Act, have not yet been promulgated.

Even so, the Court is persuaded for a number of reasons that § 7003 of the Act is in purpose only jurisdictional. First, § 7003 is not a part of Subchapter 2 of the Act, a group of provisions which sets down duties which must be discharged if liability under the Act is to be avoided. Rather, § 7003 is placed in Subchapter 7 of the Act and is described in the Act as a "miscellaneous" provision. Second, the section that immediately precedes § 7003 is a private attorney general provision that confers standing for purposes of enforcing the Act upon any "person," as that term is defined in § 1004(15) of the Act, 42 U.S.C. § 6903(15). Section 7002 does not, however, confer standing for this purpose upon the United

States. Because the drafters of the Act would have been impelled by logic to organize the Act so as to place provisions relating to standing and jurisdiction in the same portion of the Act, the placement of the provision entitled § 7003 in immediate proximity to the provision entitled § 7002 is further evidence that § 7003 was not meant to create substantive tests of liability under the Act. Third, because § 7003 is as broadly worded as it is, if it were intended to function as a liability-creating provision, it would appear to make liable even those who contribute to the handling, storage, treatment, transportation or disposal of solid or hazardous wastes in such a way that an imminent and substantial endangerment to health or the environment is created. Any provision that could logically be read so to expand the set of persons liable under the federal solid and hazardous waste regulatory scheme would surely be identified as such in the legislative history. Finally, the Act elsewhere establishes by regulations the standards of conduct that must be followed by those who generate, transport, or own or operate facilities that treat, store, or dispose of hazardous wastes. 42 U.S.C. §§ 6922, 6923, and 6924.

In sum, the Court finds that the tests of when preliminary injunctive relief may issue in cases brought under the Act, are provided not by § 7003, but by Federal Rule of Civil Procedure 65 and by the common law. The tests identified in § 7003 are merely evidentiary tests which, if satisfied, permit the Administrator to petition in some situations for immediate injunctive relief. In the great majority of controversies that the Court can envision that involve the disposal, storage, treatment or handling of solid or hazardous wastes, if an endangerment of the sort described in § 7003 can be made out, the common law prerequisite to the issuance of preliminary injunctive relief will also be existent. But in those actions in which plaintiff shows a § 7003 endangerment but fails to demonstrate that in the absence of preliminary injunctive relief irreparable harm will result, a preliminary injunction cannot issue.

■ The test to which petitions for preliminary injunctive relief must be put has been clearly enunciated. While ordinarily the function of a preliminary injunction is to preserve the status quo until a final determination upon the merits can be made, situations may arise which justify the issuance of those sorts of temporary injunctions that require the defendant to take affirmative actions. *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978). Whatever relief is requested, a preliminary injunction can issue only upon findings that: 1) the plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction is not imposed, 2) the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant, 3) the plaintiff has at least a reasonable likelihood of success on the merits and 4) the granting of the preliminary injunction will not disserve the public interest. *Burns v. Paddock*, 503 F.2d 18, 28 (7th Cir. 1974); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). *See Citizens Energy Coalition of Indiana v. Sendak*, 594 F.2d 1158, 1162 (7th Cir. 1979). A preliminary injunction is an extraordinary remedy. The burden of persuasion as to each of these findings rests upon the plaintiff. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d at 1097.

C. *Propriety of Preliminary Injunctive Relief in Case at Bar.*

■ The preliminary injunctive relief that the Court will now afford the government requires that Midco # 1 be secured and partially cleaned up and that no receptacles of chemical waste on Midco # 2 be moved. The record leaves no doubt of the shocking condition in which Midco # 1 and Midco # 2 now exist. Consequently, the Court has little difficulty in finding that the four common law prerequisites to preliminary injunctive relief are here satisfied. If no injunction issues, poisons at the two sites will continue to seep out of drums, into the soil, and into the underground water channels; plaintiff and its citizenry will be

irreparably harmed. Plaintiff and its citizenry presently face grave threats of injury from fire that may erupt at Midco # 1, from physical exposure to the contents of the open pit of poisons at Midco # 2, from physical exposure to the contents of the leaking drums at both sites, and from ingesting water contaminated by the wastes that have seeped and are seeping through the soil at the two sites. The Court is fully satisfied that these injuries with which certain of the citizens of plaintiff are threatened greatly outweigh the hardship that may be worked on the defendants by the relief the Court prescribes. Moreover, the Court specifically finds that the temporary relief here ordered will not disserve the public interest and that plaintiff has more than a reasonable likelihood of eventually prevailing on the merits.

### III. *Preliminary Injunctive Relief Prescribed*

The Court, having read plaintiff's motion for preliminary injunctive relief and being duly advised in the premises hereby GRANTS plaintiff's motion IN PART. The Court ORDERS and ADJUDGES that:

1. Summons shall be served by publication in accordance with Indiana Trial Rule 4.13 upon defendants Lovie and Earnest de Hart.

2. Defendant Intec shall within one (1) week of this Order erect a fence on the eastern and northern boundaries of the Midco # 1 property.

3. No party shall move any drums, tanks, containers, cartons, chemicals, or chemical residues that are presently located on Midco # 1 or Midco # 2, except as permitted by section III (4) of this Order or by future written decree of the Court.

4. Defendant Intec shall proceed in good faith and with all due diligence to remove from Midco # 1 and to dispose of in a fashion consistent with law all drums, cartons, or other receptacles that contain or have contained chemical residues and that either are circled in red ink on Government Exhibit 8 or have been brought onto Midco # 1 since October 19, 1977 or contain a type of paint solvent that Intec has processed at some time at Midco # 1.

In the course of removing said receptacles at Midco # 1, fire-damaged receptacles may be placed on top of fire-damaged receptacles but not on top of receptacles that are not fire-damaged. Intec shall engage in no receptacle removal activity without first giving reasonable notice to the United States Environmental Protection Agency. Intec shall permit a representative of the Environmental Protection Agency to be present as an observer on Midco # 1 during any removal activity.

Moreover, after the filing of this Order, Intec shall make a thorough investigation of the condition of Midco # 1 once per week. Should Intec find at any time that the condition of the site or of the receptacles on the site has appreciably changed since January 9, 1980, Intec shall immediately report such change in condition to the Court.

5. When defendant Intec proceeds to remove receptacles from Midco # 1 in compliance with this Order, defendant V & E Corporation, by means of receptacle-removing equipment, shall make a way of ingress and egress on the part of Midco # 1 that lies near 15th Avenue. V & E Corporation shall maintain such way for a reasonable period of time to permit Intec to remove receptacles from Midco # 1.

6. Defendants Miletich shall report to the Court within one (1) week of the date of this Order the nature of the efforts they will make to remove from their property chemical wastes.

7. Defendants Vic Kirsch, John Kirsch, and Eva Kirsch shall be dismissed as party defendants to this cause.