Joselyn JONES, et al., Plaintiffs,

v.

INMONT CORP., et al., Defendants.

No. C–1–83–1202.

United States District Court,
S.D. Ohio, W.D.

April 26, 1984.

D. David Altman, Cincinnati, Ohio, for plaintiffs.

Thomas T. Terp, James M. Moore, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter, which arises from the alleged operation of an illicit hazardous waste dump in Kentucky, came on for consideration of defendant Inmont Corporation's motion to dismiss (doc. 6), plaintiffs' memorandum in opposition (doc. 10), defendant's reply memorandum (doc. 11), and the oral arguments of both parties.

The plaintiffs' complaint alleges ten causes of action under federal and state common law and several federal statutes. The counts that are the subject of this motion are the first, a claim under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.*, (CERCLA), and the third, a claim under the Resource Conser-

vation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.*, (RCRA). Defendant's motion asserts that the plaintiffs have not stated, and cannot state, any claim for relief under these two statutes.

Defendant Inmont's motion to dismiss challenges plaintiffs' CERCLA cause of action on the ground that the damages requested by the plaintiffs are not response costs and are not, therefore, recoverable under this statute. We disagree. We hold that Count One sufficiently alleges response costs incurred within the meaning of CERCLA.

Plaintiffs' RCRA cause of action is challenged on the grounds that the statute does not apply to an abandoned or inactive dump site such as this, that there is no private right of action to abate an imminent hazard, and that the application of RCRA to activities engaged in before the effective date of the Act amounts to an impermissible retroactive application of a prospective statute. Again, we disagree. We hold that Count Three sufficiently alleges facts to establish the existence of an imminent hazard and that a private citizen may sue to abate such a hazard even if the defendant's contributory activities occurred in the past. For these reasons, which are more fully explained below, defendant's motion to dismiss is denied.

### INTRODUCTION

The plaintiffs' complaint alleges that they are Kentucky residents and owners of property adjoining an illegal dump site containing hazardous wastes generated by this defendant. The other defendant, Liberty Industries, purportedly acted as defendant Inmont's agent in transporting and dumping hazardous wastes in an open pit or ditch on a farm in Kentucky that was never issued a license or permit to accept hazardous or non-hazardous wastes. The defendants are further accused of intentionally concealing the nature of their activities from the authorities and the owner of the farm, of using unsafe and improper methods of disposing of both solid and liquid hazardous wastes, and of failing to warn the farm's owner and his neighbors of the future hazard posed by the illegal dumping.

The complaint characterizes the defendants' conduct as constituting control and operation of a hazardous waste facility and as contributing to the creation of an imminent hazard. In fact, the Administrator of the Environmental Protection Agency (EPA) designated the dump site an imminent threat to human health and removed nine hundred tons of toxic and hazardous waste from the site in March of 1983. The plaintiffs contend that these efforts have been unsuccessful in alleviating the threat of release of hazardous substances and subsequent harm to the physical and human environment. The plaintiffs request declaratory and injunctive relief and compensatory and punitive damages. The damages enumerated in the complaint include medical costs incurred, loss of property value, and loss of use of wells and lakes on plaintiffs' property.

This Court's function when reviewing a motion to dismiss is necessarily limited by the fact that the case is in such an early stage of its development; defendant Inmont has not yet answered the plaintiffs' claims against it, and no evidence has yet been presented or refuted. We have before us only the allegations of the plaintiffs' complaint, and those we accept as true and construe in plaintiffs' favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue before the Court is not whether the plaintiffs are likely to prevail in their claims under these two federal statutes; it is simply whether they are entitled to offer proof in support of those claims. *Id.* The challenged counts in the plaintiffs' complaint will not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their CERCLA and RCRA claims that would entitle them to relief under those acts. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## COUNT ONE—CERCLA

Count One of plaintiffs' complaint alleges that defendant Inmont is liable to the plaintiffs under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9607(a)(3), which imposes liability on any person who arranged for the disposal, treatment, or transport of any hazardous substance which is released, or is threatened to be released, and causes the incurrence of response costs. CERCLA was enacted to fill gaps left by the earlier Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* in dealing with abandoned dump sites, in requiring notification of the existence of inactive sites, and in providing funds for state hazardous waste programs. S.Rep. No. 848, 96th Cong., 2d Sess. 11, H.R.Rep. No. 1016 (Part I), 96th Cong., 2d Sess. 25, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6119, 6125.

■ In addition to imposing liability on generators and transporters of hazardous wastes and on operators and owners of dump sites, CERCLA also requires notification of the existence of dump sites and the occurrence of releases from them, it affords the EPA broad powers in responding to releases and threatened releases, and it establishes and regulates a trust fund to pay for necessary response actions. The defendant's motion challenges plaintiffs' claim under CERCLA on the grounds that the costs allegedly incurred are not response costs within the meaning of the statute, and that no private right of action exists for the recovery of any damages other than response costs.

### *Who Can Sue*

In its original memorandum in support of its motion, defendant alleged that private parties such as these plaintiffs have no rights of action under CERCLA; in its reply memorandum and at oral argument, however, defendant conceded that section 9607(a)(4)(B) indeed authorizes recovery by "any other person" who has incurred certain costs defined in the act.

■ The phrase "any other person" has even been interpreted to include a dump site owner, which itself could have been liable under CERCLA. *City of Philadelphia v. Stephan Chemical Co.,* 544 F.Supp. 1135, 1143 (E.D.Pa.1982). Noting that the key objective behind CERCLA was to facilitate the prompt clean up of hazardous waste sites by providing a means of financing both governmental and private responses, the district court stated that the liability provision of section 9607 "gives a private party the right to recover its response costs from responsible third parties." *Id.* In light of the plain language of the act itself, and the broad judicial interpretation reflected in the *Stephan Chemical* case, the plaintiffs in the instant case have the right to sue under CERCLA's liability provision.

### *Who Can Be Sued*

■ Section 9607 is similarly clear in its description of who is a responsible party subject to suit under the provision: Liability is imposed upon those who own and operate a facility, those who owned or operated a facility at a time when hazardous wastes were disposed of there, those who arranged for disposal in or transport to such a facility, and those who transport or transported hazardous wastes. 42 U.S.C. § 9607(a)(1)–(4). As it is written in the past tense, and as it expressly includes those who merely arranged for the disposal or transportation of hazardous wastes to a facility from which a present release is occurring or is threatened, section 9607 imposes liability on past generators such as defendant Inmont. In *United States v. Wade,* 546 F.Supp. 785 (E.D.Pa.1982), the EPA attempted to obtain an injunction against several former off-site generators of hazardous wastes. The government proceeded under the imminent hazard section of CERCLA, however, and the action was dismissed. The district court indicated in dictum that the appropriate action would have been under section 9607, which "clearly includes generators of hazardous wastes among those potentially liable to be sued"

and which "is written in the past tense and clearly applies to past generators." *Id.* at 793; *accord United States v. Outboard Marine Corp.*, 556 F.Supp. 54, 56 (N.D.Ill. 1982).

■ There is no doubt that the imposition of liability on former generators constitutes a retroactive application of the statute. In an exhaustive discussion of the legislative history, the District Court for the Northern District of Ohio concluded that the clear Congressional intent to make industry pay for the costs to clean up hazardous wastes sites was sufficient to override the presumption against retroactivity. *Ohio ex rel. Brown v. Georgeoff*, 562 F.Supp. 1300, 1314 (N.D.Ohio 1983) (past transporters' motion to dismiss denied). The complaint alleges that defendant Inmont not only arranged for the transportation and disposal of the hazardous wastes now allegedly being released from the Kentucky site, but also operated the site at one time. Although all of its activities admittedly occurred in the past, defendant Inmont is a responsible party under section 9607(a)(2) or (a)(3). It is, therefore, liable under this section to any person who incurred necessary response costs consistent with the national contingency plan.

*Definition of Response Costs*

To survive the defendant's motion to dismiss Count One of the complaint, the damages enumerated must be "necessary costs of response" and "consistent with the national contingency plan." *See* 42 U.S.C. § 9607(a)(4)(B). The phrase "response costs" is nowhere defined in the Act, and the word "response" is defined only as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). Subsection (23) of this section defines "remove" and "removal" to include actions necessary to clean up or remove hazardous substances, to monitor, assess, and evaluate a release, to dispose of removed material, or to prevent, minimize, or mitigate damage to the public or the environment. Specific examples given include security fencing, alternative water supplies, temporary evacuation and housing, and other emergency assistance. Subsection (24) defines "remedy" and "remedial action" as actions consistent with a permanent remedy to prevent or minimize the release of hazardous substances. Specific examples given include containment actions, treatment or incineration, provision of alternate water supplies, and any monitoring reasonably required to assure that the actions taken protect the public and the environment.

The amended national contingency plan, required by 42 U.S.C. § 9605 and finally promulgated on July 16, 1982, appears at 47 Fed.Reg. 31180, 31202 (1982) (to be codified at 40 C.F.R. § 300), and adds nothing to the statutory definitions.

Unfortunately, few courts have faced the issue of what items of damages are response costs recoverable under CERCLA. In *United States v. Price*, 577 F.Supp. 1103 (D.N.J.1983), *reported at* 19 E.R.C. 1638, the court held that the bare assertion that the EPA had incurred response costs was not sufficient and dismissed the government's claim under section 9607. 19 E.R.C. at 1644. The court did indicate that costs of investigation and in producing a feasibility study might have rendered the complaint sufficient, had such costs only been alleged as a basis for the lawsuit. *Id.* The court in *Environmental Defense Fund v. Lamphier*, 12 E.L.R. 20843 (E.D.Va. filed May 14, 1982), *aff'd on other grounds*, 714 F.2d 331 (4th Cir.1983), held that investigative costs were not response costs recoverable under CERCLA.

■ In paragraph 64 of their complaint, the plaintiffs in the instant case allege that they have incurred, and will continue to incur, response costs estimated at five million dollars. While this bare assertion would be insufficient under the rule established in *Price*, other paragraphs allege that certain plaintiffs have incurred costs for medical testing and have lost the use of wells for drinking water and farming purposes. (Complaint at ¶¶ 48(d), 53, and 64(c)). These damages appear to meet the definition of "removal" expressed in section 9601(23). It would be premature for

this Court to attempt to decide whether plaintiffs are entitled to recover any damages that would meet the CERCLA definition of response costs. In light of the present procedural posture of the case, however, we cannot say as a matter of law that the plaintiffs are not so entitled. The statutory definitions of removal and remedial actions are broadly drawn and appear to cover at least some of the elements of damages claimed by these plaintiffs.

The second prong of the definition of damages recoverable under CERCLA requires that they be consistent with the national contingency plan. Defendant Inmont contends that plaintiffs' complaint must fail, as it does not allege that the response costs incurred were consistent with the plan. We agree with the district court in *Stephan Chemical* that the national contingency plan is a means to assure that response actions are both cost-effective and environmentally sound and that, therefore, consistency with that plan goes more to the recoverability of various items of damages than to the existence of a claim for relief under the act. 544 F.Supp. 1144, n. 16.

*Timing of Response Costs*

■ Defendant Inmont's final challenge to the sufficiency of Count One of plaintiffs' complaint is that only costs already incurred, not future response costs, are recoverable under CERCLA. Several courts have addressed and rejected this position. In *Ohio ex rel. Brown v. Georgeoff*, 562 F.Supp. 1300 (N.D.Ohio 1983), the state had already spent $825,000 at the time it filed suit, but it estimated that the total cost of the cleanup would be in excess of ten million dollars. The court noted that the statute indeed speaks of costs "incurred" in the past tense, but held that once some expenditure has been made, the controversy is sufficiently real to permit the court to issue a declaratory judgment on defendant's liability. *Id.* at 1316. Similarly, a Pennsylvania district court held that some emergency cleanup measures must be instituted before the government can sue responsible parties for both the costs incurred and to be incurred. *United States v. Wade*, 577 F.Supp. 1326 (E.D.Pa. 1983) *reported in* 20 E.R.C. 1277, 1283.

To require either the government or a private party to complete cleanup prior to filing suit would defeat the dual purposes of CERCLA to promote rapid response to hazardous situations and to place the financial burden on the responsible parties. Therefore, as the plaintiff's complaint does allege that they have already incurred some portion of the response costs necessary to clean up the site, the controversy is sufficiently real to allow the Court to determine defendant's liability for future costs.

*Conclusion*

Defendant Inmont's motion to dismiss Count One of plaintiffs' complaint is denied, therefore, as we hold that: 1) private parties such as these plaintiffs clearly have a cause of action under the liability provision of CERCLA; 2) past generators of hazardous wastes are responsible parties under that provision; 3) certain elements of damages alleged in the complaint may prove to be response costs as that term is defined in CERCLA; and, 4) some costs must be incurred prior to the filing of a suit under the liability provision of section 9607, but cleanup need not be completed prior to the filing of such a suit. If, as this case proceeds, it becomes apparent that the plaintiffs have not actually incurred any response costs, the Court will, of course, entertain an appropriate motion at that time. Indeed, more specific allegations as to the costs already incurred and anticipated to be incurred in the future would have been helpful, but this point of law is not yet developed to the extent that this Court can state that plaintiffs' complaints are insufficient as a matter of law.

## COUNT THREE—RCRA

Count Three of plaintiffs' complaint attempts to utilize the citizen suit provision embodied in section 7002 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972, to stop defendant Inmont's alleged violations of several provisions of the Act. RCRA was passed to close what

Congress felt was the "last remaining loophole in environmental law," unregulated land disposal of hazardous and non-hazardous wastes. H.R.Rep. No. 1491, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Ad.News 6238, 6241.

One objective of the Act, and the one relevant to the instant case, is to promote the protection of health and the environment by regulating hazardous waste management from generation to disposal. 42 U.S.C. §§ 6902, 6921–6934. The Administrator of the EPA is authorized to promulgate regulations concerning identification of hazardous wastes, standards for generators and transporters of such wastes, standards for owners and operators of waste treatment, storage, and disposal facilities, and guidelines for state hazardous waste programs. RCRA further authorizes the EPA to conduct inspections, to exercise broad enforcement powers, to carry out inventories of hazardous waste sites, and to monitor and test sites at which hazardous wastes have been handled. RCRA also contains a citizen suit provision, which empowers any person to commence a civil action to enjoin violations of the standards and requirements of the Act or to require the Administrator of the EPA to perform any act, other than an act that is merely discretionary. *Id.* § 6972.

RCRA provisions allegedly violated by defendant Inmont are: 1) section 6924, which authorizes EPA to promulgate regulations requiring owners and operators of hazardous waste facilities to performance standards; 2) section 6925, which authorizes EPA to promulgate regulations requiring owners and operators to obtain a permit; 3) section 6945, which prohibits open dumping of hazardous waste and provides a timetable for compliance with the prohibition in states that adopt a solid waste plan; and 4) section 6973, which authorizes action against sites presenting an imminent and substantial endangerment to health and the environment.

The illicit transportation and disposal activities of defendant Inmont allegedly occurred in 1973 and 1974; the only activity still occurring is the storage of waste in, and the escape of waste from, the dumpsite. The defendant's motion alleges that RCRA has no application to inactive waste disposal sites, does not permit the private right of action asserted by plaintiffs, and cannot be used to establish retroactive liability against defendant Inmont.

*Liability Under Sections 6924 and 6925*

■ Defendant correctly argues that sections 6924 and 6925 are merely enabling provisions authorizing EPA to promulgate regulations and that, therefore, the sections themselves contain no substantive provisions for Inmont to be charged with violating. Indeed the regulations under these sections were not promulgated until May of 1980. The effective date, established by section 6930 to be six months after promulgation, was November 19, 1980. Therefore, only one who owned or operated a hazardous waste disposal facility as of November 19, 1980 was required to obtain an operating permit and to adhere to the standards in the regulations. *Environmental Defense Fund v. Lamphier*, 714 F.2d 331, 335 (4th Cir.1983).

Even accepting as true plaintiff's allegation that defendant operated the dump site in 1973 and 1974 when its wastes were disposed of there, the complaint contains no allegations to tie the defendant to operation of the site as of November 19, 1980. Plaintiff's argument that defendant is still "storing" its wastes at the site cannot survive an analysis of the statutory definitions of "storing" and "disposal." Section 6903(3) defines storage as containment of waste that does not constitute disposal; subsection (33), in turn, defines disposal as placing waste in or on the land so that it can enter the environment. According to plaintiff's own allegations, defendant Inmont is not storing waste at this dump site, it disposed of waste there. Therefore, no matter how we construe the allegations of the complaint, defendant Inmont cannot be liable for violating sections 6924 and 6925, as it was never subject to those sections of RCRA.

## Liability Under Section 6945

Section 6945, on the other hand, is not merely an enabling provision allowing the promulgation of regulations. Although it appears in the subchapter describing state waste management plans, it appears to contain a prohibition against open dumping: "Upon promulgation of criteria under section 6907(a)(3) of this title, any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited ...." At least one court has held that this section contains a substantive requirement, the violation of which gives rise to a cause of action brought under the citizen suit provision found in 42 U.S.C. § 6972. *O'Leary v. Moyer's Landfill, Inc.*, 523 F.Supp. 642 (E.D.Pa.1981). In that case, private plaintiffs sued the owners and operators of an active landfill to halt the discharge of leachate and the contamination of local wells and creeks. The court held that section 6945 contained a prohibition against open dumping, but that compliance with a state plan adopted under RCRA could serve as a defense to an action seeking to compel compliance with the prohibition. *Id.* at 650.

A more recent case rejected the conclusion that section 6945 contains a direct, self-executing, federal prohibition on open dumping and refused to follow *O'Leary*. In that case, *City of Gallatin v. Cherokee County*, 563 F.Supp. 940 (E.D.Tex.1983), the city sued under the citizen suit provision to enjoin the defendant county from continuing to build a municipal solid waste disposal site. At trial, both parties assumed that section 6945 prohibited open dumping and concentrated their efforts on determining whether the proposed facility would be a sanitary landfill or an open dump. Following trial, the court dismissed the action on its own motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that only states that seek federal funds under section 6947 are required to prohibit open dumping and that section 6945 contains no substantive prohibition that can be enforced by private citizens. *Id.* at 950–51.

The only other guidance available to this Court in determining whether section 6945 contains a substantive prohibition enforceable by private citizens is a statement by the EPA mentioned in both *O'Leary* and *City of Gallatin*. Judge Pollak in deciding *O'Leary* deferred to the agency's interpretation of the section, 523 F.Supp. at 650, while Chief Judge Justice in deciding *City of Gallatin* found the interpretation to be not only dictum but also internally inconsistent and incompatible with the legislative scheme, 563 F.Supp. at 948. At issue is this statement by the EPA:

> The open dumping prohibition is a provision of federal law which stands on its own, separate from the state planning program. In conjunction with the citizen suit provision the open dumping prohibition creates a Federal cause of action allowing citizens and states to seek relief in Federal Court for damaging solid waste management practices.

44 Fed.Reg. 45066, 45072.

For three reasons, this Court will follow the decision of *O'Leary* that section 6945 contains a direct prohibition on the open dumping of solid or hazardous waste. First, the language of the statute itself is clear: "[A]ny solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited ...." The section includes an effective date and establishes certain defenses and timetables, of course, but the prohibition itself seems clear enough. Second, the agency interpretation, while not controlling, is entitled to great weight. *See Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). The EPA apparently interprets section 6945 to contain a direct prohibition. 44 Fed.Reg. 45066, 45072. Third, as RCRA does not require any state to propose or adopt a solid waste management plan, reading the prohibition of section 6945 as becoming effective only upon EPA approval of such a state plan would have the effect of permitting open dumping

in states that do not have an approved solid waste management plan. We do not think that Congress intended to create such a gap in its comprehensive scheme regulating solid and hazardous waste management.

Although we have decided that section 6945 does contain a substantive prohibition that can be enforced by private citizens using the citizen suit provision, this decision does not resolve the current controversy. As the prohibition, by its terms, is effective only upon the promulgation of criteria under another RCRA section, 42 U.S.C. § 6907(a)(3), defendant Inmont argues that it is prospective and cannot be applied to dumping activities engaged in prior to the effective date. We agree, and because the complaint alleges dumping activities by defendant Inmont only in 1973 and 1974, long before RCRA was enacted, we hold that the plaintiffs cannot enforce the open dumping prohibition against defendant Inmont.

*Liability Under Section 6973*

The final RCRA violation alleged in plaintiffs' complaint is that defendant Inmont's activities have contributed to the creation of an imminent and substantial endangerment to health and the environment. This language is taken from section 6973 of RCRA:

> Notwithstanding any other provision of this chapter, upon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit ... to immediately restrain any person contributing to such handling, storage, treatment, transportation, or disposal ....

42 U.S.C. § 6973(a). The plaintiffs' attempt to use this section against defendant Inmont raises several issues: 1) Does this section contain a substantive order or requirement enforceable by a private citizen using the citizen suit provision; 2) Is defendant Inmont, an off-site generator of

waste, a "person contributing to" the activity presenting the imminent hazard; and, 3) Can the section be applied to activities engaged in prior to the passage of RCRA?

1. *Substantive Provision*

There is a split of authority over whether section 6973 is merely a jurisdictional provision granting authority to EPA to bring suit or a substantive prohibition against activities that may present an imminent hazard to health or the environment. Only if the section contains a substantive provision may a citizen sue to enforce it, because the citizen suit provision authorizes suits to enjoin violations of a "permit, standard, regulation, condition, requirement, or order" effective under RCRA. The distinction between "substantive" and "jurisdictional" is the distinction between a statute that creates liability and one that merely authorizes remedies or proceedings. *United States v. Outboard Marine Corp.*, 556 F.Supp. 54, 55 (N.D.Ill.1982).

We find that the imminent hazard provision of section 6973 does indeed impose liability, distinct from that imposed by any other RCRA provision, on those contributing to activities that may present an imminent and substantial endangerment. We hold, therefore, that section 6973 does contain a substantive provision, the violation of which can properly form the basis for a suit by a private citizen.

The language of the statute itself prohibits the handling, storage, treatment, transportation, or disposal of waste that may present an imminent and substantial endangerment to health or the environment. Compliance with the other requirements of RCRA is no defense to an action under this section. Of course, the section also contains some jurisdiction elements; it spells out where the suit can be brought, what remedies are available, and who must be notified of the suit. It appears clear to this Court, however, that the primary purpose of section 6973(a) is to impose liability on any person who, although complying with all other provisions of RCRA, conducts ac-

tivities that contribute to an imminent hazard.

Three courts addressing this issue have determined that the section is just a jurisdictional grant to the EPA. *United States v. Waste Industries,* 556 F.Supp. 1301 (E.D.N.C.1982); *United States v. Solvents Recovery Service,* 496 F.Supp. 1127 (D.Conn.1980); *United States v. Midwest Solvent Recovery, Inc.,* 484 F.Supp. 138 (N.D.Ind.1980). As the plaintiff in each of these cases was the Administrator of the EPA, none of these courts addressed the issue of substantive content of section 6973 to determine whether a private citizen could sue to enjoin violation of that substantive provision. Rather the courts were searching for the appropriate standards to apply in deciding whether to grant an injunction requested by EPA under authority of section 6973. In the earlier two cases, the courts decided that the source for the substantive standards was the federal common law of nuisance. 496 F.Supp. at 1134; 484 F.Supp. at 144. In *Waste Industries,* however, after holding that the comprehensive regulatory schemes of RCRA and CERCLA had preempted the federal common law, the court declined to search for an alternate source of substance for section 6973. The court stated that Congress "intended section [6973] to serve purposes different from the other liability sections of the RCRA." 556 F.Supp. at 1316, n. 29. The court failed to define those purposes, however, or to explain how the section could be applied in the absence of either internal or external substantive standards to guide the application.

Only one court has faced the issue squarely and decided that section 6973 contains both substantive and jurisdictional elements. *United States v. Diamond Shamrock Corp.,* No. 80–1857 (N.D.Ohio, filed May 29, 1981), *reported in* 17 E.R.C. 1329. Even here, however, the court was not faced with a private party attempting to use the citizen suit provision to enforce a violation of the standards expressed in section 6973, but was merely addressing the applicability of the section to acts occurring prior to the passage of RCRA.

A number of courts faced with suits brought under section 6973 have simply assumed that the section contained a substantive standard and have so applied it without expressly deciding the issue. *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1110 (Minn.1982); *United States v. Wade,* 546 F.Supp. 785, 788 n. 6 (E.D.Pa.1982); *United States v. Vertac Chemical Corp.,* 489 F.Supp. 870, 884–85 (E.D.Ark.1980). In *Wade,* the plaintiff was the Administrator of the EPA, and the court addressed the issue of the nature of section 6973 only to locate standards to guide the issuance of an injunction. In *Vertac,* the state agency charged with compelling compliance with state pollution laws also brought suit, but its authority was state law, not the citizen suit provision of RCRA. In *Reilly Tar,* however, the State of Minnesota, the City of St. Louis Park, and the City of Hopkins brought suit under section 6973 for injunctive relief. Among other grounds, defendant Reilly Tar's motion to dismiss asserted that section 6973 is merely jurisdictional and provides no substantive standards for determining liability. The court apparently rejected this stance, as it held that the complaint was sufficient in that it did "establish an imminent and substantial endangerment to health or the environment." 546 F.Supp. at 1110. Although *Reilly Tar* is the only case that addressed the issue in a context appropriate to the instant case, the reasoning behind the finding of substantive standards in section 6973 to govern issuance of an injunction also applies to the finding of substantive standards to permit enforcement by a private citizen.

Congress has interpreted section 6973 as a codification of the common law of nuisance, and has noted that the section "incorporates the legal theories used for centuries to assess liability for creating a public nuisance ... and to determine appropriate remedies." S.Rep. No. 172, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5019, 5023. This Congress, which was engaged in making refining amendments in the 1976 Act, saw both

substantive and jurisdictional elements in the section. We agree.

The final reason for our holding that section 6973 contains substantive prohibitions, the violation of which give rise to citizen suits brought under section 6972, is that any other result would create a gap in enforcement of RCRA's provisions that was probably not in the contemplation of Congress and is surely not in the best interests of the public. The authority granted the EPA under section 6973 is permissive, not mandatory. The agency could, therefore, decline to take any action against those who, although in compliance with all other applicable RCRA provisions, were contributing to an imminent and substantial endangerment. Reading section 6973 as containing a substantive provision simply ensures that private citizens can step in and enforce the section should EPA decline to do so.

Therefore, in light of the language of the statute itself, the more persuasive judicial interpretations, and the Congressional interpretation, we hold that section 6973 of RCRA contains substantive provisions or requirements that, when violated, give rise to a cause of action under the citizen suit provision.

### 2. Liability of Off-Site Generator

■ Defendant Inmont's second challenge is that section 6973 does not apply to an off-site generator. As the complaint alleges that Inmont's conduct amounted to operation of the illicit dump site, this challenge does not warrant much discussion. We find that off-site generators are indeed among those who can be found to be "contributing to" the activity that may present an imminent and substantial endangerment within the meaning of the statute.

The legislative history of the 1980 amendments to the Act specifically mentions the generator:

[A] company that generated hazardous waste might be someone 'contributing to' an endangerment under section [6973] even where someone else deposited the waste in an improper disposal site (simi-lar to strict liability under common law), where the generator had knowledge of the illicit disposal or failed to exercise due care in selecting or instructing the entity actually conducting the disposal. S.Rep. No. 172, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5019, 5023.

Defendant Inmont cites the *Wade* case in support of its contention that an off-site generator is not a proper defendant in an action under 6973, and the court in that case did hold that the section is not applicable to a non-negligent past generator of wastes. 546 F.Supp. at 792. The court cited the Senate Report quoted above and ditinguished it on the basis that, in *Wade*, the complaint alleged no actual knowledge or negligence. *Id.* at 791. In the instant case, however, the plaintiffs have alleged negligence and actual knowledge on the part of the generator, so the reasoning of *Wade* is inapposite.

In *Wade*, the defendant conceded that section 6973 would apply to a generator currently transporting hazardous waste in an unsafe manner. *Id.* at 790, n. 11. The real issue, apparently, is not whether a generator can be restrained from "contributing to" an imminent hazard, as it clearly can be, but whether a *past* generator can be so restrained under section 6973.

### 3. Past Acts and Retroactive Application

The crux of defendant's argument against application of section 6973 to activities that occurred prior to passage of RCRA is that the section is written in the present tense. As the complaint alleges that the transportation to and disposal in the illicit dump site occurred only in 1973 and 1974, defendant Inmont contends that it cannot possibly be contributing to any potentially hazardous condition.

It is apparent that Inmont no longer handles, stores, treats or transports wastes with relation to the illicit site at issue in the instant case. Courts have differed, however, in their definitions of the word "dis-

posal" within the meaning of section 6973; some have held that "disposal" requires a present, human act, while others have held that the continuing leakage from a site is a "disposal" within the meaning of the statute. "Disposal" is defined in RCRA as "the discharge, deposit, injection, dumping, spilling, *leaking*, or placing of any solid waste or hazardous waste into or on any land or water so that ... [it] may enter the environment." 42 U.S.C. § 6903(3) (emphasis added).

In *Waste Industries*, the court dismissed the EPA's RCRA count partly because the court held that the word "disposal" required active human conduct. 556 F.Supp. at 1306. In *Wade*, similarly, the court was "inclined to the view that current leaking of previously dumped waste does not constitute 'disposal' enjoinable under the clear language of section [6973]." 546 F.Supp. at 790. On the other hand, the court in *Diamond Shamrock* held that no active human participation was required for a disposal to occur. 17 E.R.C. at 1333. The complaint in *Solvents Recovery Service* was not insufficient despite the lack of allegations of continuing disposal up to the filing of the complaint. 496 F.Supp. at 1129. Finally, in *United States v. Price*, 523 F.Supp. 1055, 1071 (D.N.J.1981), *aff'd*, 688 F.2d 204 (3d Cir.1982), the court denied the defendants' motion for summary judgment on the RCRA claim and held that disposal need not result from any affirmative action but may be the result of passive inaction.

We find the reasoning of *Wade* and *Waste Industries* unpersuasive, primarily because it strains against the very language of the statute itself, which includes "leaking" as part of the definition of "disposal." We agree, therefore, with the statements of the district court in *Price* that the statute authorizes restraint of further leaking of hazardous wastes, and that the leaking need not result from any affirmative action by the defendant.

Our definition of "disposal" foreshadows our holding that section 6973 can be applied to inactive or dormant waste sites, such as the one involved in the instant case. The two cases cited by defendant Inmont for the proposition that section 6973 can be applied only prospectively are *Wade* and *Waste Industries*. The holding in *Wade*, however, was not so broad as to prevent any application of the imminent hazard provision to inactive waste sites; rather, the holding was only that a non-negligent, past, off-site generator could not be held liable under section 6973. 546 F.Supp. at 792. *Waste Industries*, as defendant correctly notes, does state that section 6973 of RCRA has no application to inactive or abandoned waste sites. 556 F.Supp. at 1308.

The Third Circuit rendered an opinion on this topic in *Price*, where the defendants were the former owner-operator and present owners of an inactive landfill leaking hazardous wastes: "There is no doubt, however, that [6973] authorizes the clean-up of a site, even a dormant one, if that action is necessary to abate a present threat to the public health or the environment." 688 F.2d at 214. The court cited as support the legislative history of CERCLA, in which Congress acknowledged that RCRA was primarily prospective and applied to past sites only to the extent that they posed an imminent hazard. S.Rep. No. 848, 96th Cong., 2d Sess. 11; H.R.Rep. 1016 (Part I), 96th Cong., 2d Sess. 21, *reprinted in* 1980 U.S.Code Cong. & Ad. News 6119, 6125. Similarly, the EPA, while recognizing the prospective nature of the majority of RCRA's provisions has stated that "RCRA already provides one tool which can be used to deal with the problems of inactive and abandoned sites—the imminent hazard provision of Section [6973]." 45 Fed.Reg. 33170 (1980).

Defendant Inmont's argument that application of section 6973 to acts that took place prior to passage of the statute is an impermissible retroactive application was examined and rejected in both *Price* and *Diamond Shamrock*. The *Price* court focused on the purpose of the action under 6973, to halt a present imminent hazard by enjoining continuing disposal, *i.e.* leaking,

from the dump site. 523 F.Supp. at 1071. And, in *Diamond Shamrock*, the court further explained that, as the section imposed no compensatory or punitive damages as a result of the past acts, it was not punishing past acts and did not amount to an impermissible retroactive application. 17 E.R.C. at 1334. In denying defendant's motion to dismiss, the court in *Reilly Tar* relied upon the district court's opinion in *Price*, and it too, refused to hold that section 6973 cannot be applied to prior owners of inactive sites. 546 F.Supp. at 1109.

We are persuaded by the language of section 6973, by the EPA interpretation of the section, by the Congressional intent regarding its applicability to inactive sites, and by the greater weight of judicial interpretations, to the view that section 6973 can be applied to enjoin present leaking resulting from the passive inaction of those whose past acts were the source of the present imminent hazard.

*Conclusion*

Defendant Inmont's motion to dismiss Count Three of plaintiffs' complaint will be denied as we hold that plaintiffs can sue to enforce the substantive prohibition contained in the section, that an off-site generator can be a person "contributing to" an imminent hazard, and that the section has application to inactive sites posing a present hazard to health and the environment.

## CONCLUSION

As plaintiffs' complaint did not allege any private right of action to seek victims' compensation or property damage claims under these two counts of the complaint, we express no opinion on defendant Inmont's vehement argument against implying a private right of action under either RCRA or CERCLA. We hold only that the plaintiffs' complaint sufficiently alleges a cause of action under section 9607 of CERCLA for liability for response costs and under section 6973 of RCRA for abatement of an imminent hazard. Defendant's motion is denied.

SO ORDERED.