M.R. (VEGA ALTA), INC.; Santa Cruz, Inc.; Gomera (Dorado), Inc., and Monte Rey S.E., Plaintiffs,

v.

CARIBE GENERAL ELECTRIC PRODUCTS, INC.; General Electric Company; West Company of Puerto Rico, Inc.; The West Company, Inc.; Motorola Electronica de Puerto Rico, Inc.; Motorola International Development Corporation; Unisys Corporation; Harman Automotive Puerto Rico, Inc., and Harman Industries, Inc., Defendants.

Civil No. 97–2294 (JAF).

United States District Court, D. Puerto Rico.

Dec. 3, 1998.

Margaret N. Strand, Oppenheimer Wolff Donnelly and Bayh, Washington, DC, Jose R. Lazaro–Paoli, Guillermety & Kelly, San Juan, PR, for M.R. (Vega Alta) Inc, Santa Cruz, Inc., Gomera (Dorado), Inc, Monte Rey S.E., plaintiffs.

Eric A. Tulla, Rivera, Tulla & Ferrer, Hato Rey, PR, Langley R. Shook, Sidley & Austin, Washington, DC, Carolyn H. Williams, Philip A. Sechler, Williams & Connolly, Washington, DC, for Caribe General Elec. Products, Inc., General Elec. Co., defendants.

Michael Bogdonoff, Dechert, Price & Rhoads, Philadelphia, PA, Jay A. Garcia–Gregory, Fiddler, Gonzalez & Rodriguez, San Juan, PR, John J. Ennis, Deckert, Price and Rhoads, Philadelphia, PA, for West Co. of PR, Inc., West Co., Inc., defendants.

Rafael Perez–Bachs, McConnell Valdes, San Juan, PR, Jacqueline Denning, Arnold & Porter, Washington, DC, for Motorola Electronica De P.R., Inc., Motorola Intern. Development Corp., defendants.

Eric A. Tulla, Rivera, Tulla & Ferrer, Hato Rey, PR, Langley R. Shook, Sidley & Austin, Washington, DC, Christopher H. Buckley, Jonathan K. Tycko, Gibson, Dunn and Crutcher LLP, Washington, DC, for Unisys Corporation, Harman Automotive Puerto Rico, Inc., Harvard Industries, Inc., defendants.

Charles A. Quinlan, III, U.S. Department of Justice, Washington, DC, for United States Environmental Protection Agency, Carol M. Browner, Jeanne M. Fox, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, M.R. (Vega Alta), Inc., Santa Cruz, Inc., Gomera (Dorado), Inc., and Monte Rey S.E., bring a complaint against Defendants Motorola Electrónica de Puerto Rico, Inc.; Motorola International Development Corporation; Unisys Corporation; Caribe General Electric Products, Inc.; General Electric Company; West Company of Puerto Rico, Inc.; and West Company, Inc. (all these defendants jointly, "Private Defendants"), and the Environmental Protection Agency ("EPA"), for alleged violations of various state and federal laws.

### I.

### Causes of Action

#### A. Counts 1–8 Against Private Defendants

Plaintiffs allege ten causes of action. The first count seeks the costs of response through the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675, from Private Defendants. *See* 42 U.S.C.

§ 9607(a). The second count is a citizens suit under CERCLA § 310(a)(1) against Private Defendants, seeking enforcement of an EPA order issued under CERCLA § 106, 42 U.S.C. § 9606(a). *See* 42 U.S.C. § 9659(a)(1). The third count is for interference with contract under Article 1802, Civil Code of Puerto Rico, 1930, as amended, 31 L.P.R.A. § 5141 (1990). The fourth count is that Plaintiffs were a third-party beneficiary of the contracts between Defendants and the government of Puerto Rico. *See* 31 L.P.R.A. § 3374 (1990). The fifth count seeks damages for negligence against Private Defendants, pursuant to Article 1802 of the Puerto Rico Civil Code. *See* 31 L.P.R.A. § 5141 (1990). The sixth count alleges that Private Defendants are liable for nuisance, pursuant to Article 277 of the Puerto Rico Civil Code. *See* 32 L.P.R.A. § 2761 (1990). The seventh count alleges that Private Defendants' release of substances into Plaintiffs' underground water supply constitutes a trespass against Plaintiffs' property. The eighth count alleges that as a result of the Private Defendants' abnormally dangerous activities, the mishandling of hazardous substances, they are strictly liable.

### B. *Counts 9–10 Against the EPA*

The ninth count is a citizens suit pursuant to CERCLA § 310(a)(2) against the EPA, which seeks judicial review of the EPA's oversight of the CERCLA cleanup and injunctive relief. 42 U.S.C. § 9659(a)(1). The tenth count is a torts claim against the EPA pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346(b).

### II.

### *Legal Standard for Motion to Dismiss*

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted ..." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. Somerville*, 972 F.2d 440, 442–43

(1st Cir.1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III.

### *Factual Background*

The Vega Alta Site ("Vega Alta" or the "Site") in Vega Alta, Puerto Rico, extends over five square miles and includes a public water supply well field and industrial park. The Site has facilities owned and/or operated, or formerly owned and/or operated, by a number of manufacturers, including the Private Defendants. Since at least the 1950s, manufacturers operating at the Site have used and disposed of hazardous substances.

Plaintiffs allege that the Private Defendants, at their plants in Vega Alta, used chlorinated solvents and other chemicals and hazardous substances in their operations, and disposed of the hazardous wastes into an open trench and elsewhere within the Site. Plaintiffs allege that the underground water beneath their property and their public and private well water is contaminated with trichloroethylene (TCE), trichloroethane (TCA), tetrachloroethylene (PCE) and other hazardous substances derived from the break-down of these chemicals that Private Defendants dumped. On September 21, 1984, the EPA placed the Vega Alta Public Well Field site on the National Priorities List.

In 1984, the EPA commenced a study to investigate possible avenues to remedy contamination of the water supply. The EPA divided the cleanup activities into two categories: those addressing groundwater contamination and those addressing soil or source contamination. The EPA began its remedial action with the groundwater contamination.

Following a study in 1987, the EPA issued the first Record of Decision ("ROD") for the Vega Alta Site selecting a remedy of pumping the contaminated groundwater to the surface and treating it to remove the hazardous substances ("pump and treat" remedy). In 1988, pursuant to CERCLA § 106, 42

U.S.C. § 9606, the EPA issued the first administrative order requiring responsible parties, Caribe GE, Motorola, Harman, West, and PRIDCO to pay for and implement the remedial action selected in the ROD. Plaintiffs allege that these parties never complied with this provision of the order. The EPA modified its remedial approach and administrative order in 1989, 1994, and 1997.[1] The EPA alleges that each time it modified a selected remedy for the groundwater contamination, it explained its reasons in an "Explanation of Significant Differences" ("ESD"), in accordance with 42 U.S.C. § 9617(c).

The EPA also took remedial action regarding the soil contamination. In 1990, the EPA issued an administrative order to the responsible parties, requiring them to conduct an investigation regarding the soil contamination. In 1997, the EPA issued an ROD regarding the soil contamination which included: (1) the operation of a Soil Vapor Extraction ("SVE") treatment system to remove volatile organic compounds from contaminated soils; (2) the possible inclusion of an air treatment system on the SVE to ensure that air discharges do not exceed permissible discharge limits; and (3) the implementation of a monitoring program for sample collection and analysis of soil vapors before and after operation of the SVE treatment system.

## IV.

### Counts 1, 2, and 9: CERCLA Claims

CERCLA, 42 U.S.C. §§ 9601–9675, establishes a comprehensive statutory scheme to address and effectuate the cleanup of actual or threatened releases of hazardous substances into the environment. CERCLA provides the EPA with expansive authority to effectuate a cleanup when there is an actual or threatened release of a hazardous substance into the environment at a particular site. CERCLA requires the President to create a National Priorities List ("NPL") establishing the order of priority for the cleanup of national hazardous waste sites. 42 U.S.C. § 9605(a)(8). Adding a site to the National Priorities List designates it as a Superfund site. The EPA may directly undertake a removal or remedial action[2] that it deems "necessary to protect the public health or welfare or environment." CERCLA § 104(a)(1), 42 U.S.C. § 9604(a)(1). Alternatively, the EPA may compel responsible parties to undertake a removal or remedial action, either by issuing an administrative order, or by seeking judicial injunctive relief. CERCLA § 106(a), 42 U.S.C. § 9606(a).

 As federal courts are of limited jurisdiction, a plaintiff may file suit in federal court only pursuant to a statutory grant of authority which permits the court to hear the asserted claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Moreover, when suing the United States or an instrumentality thereof, a plaintiff may not rely upon the general federal question jurisdiction of 28 U.S.C. § 1331, but must bring suit pursuant to a specific statutory provision that waives the government's sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). CERCLA § 310(a)(2), 42 U.S.C. § 9659(a)(2), authorizes a person to sue the President or any other officer of the United States "where there is alleged a failure of the President or of such other officer to perform any act or duty ... which is not discretionary with the President or such other officer." 42 U.S.C. § 9659(a)(2). However, this grant of federal

---

1. The 1987 remedy provided for the extraction and treatment of groundwater using four water supply wells, with discharge of treated water from three of these wells into the Puerto Rico Aqueduct and Sewer Authority ("PRASA") distribution system for public use. In 1989, the EPA modified the remedy to require the construction of a system capable of both surface discharge of the treated groundwater and discharge into the PRASA distribution system. Because the groundwater contamination worsened, in 1994 the EPA further modified the remedy to require

extraction and treatment of groundwater from one of the original four wells and from a new well. However, during this time, the EPA obtained new information which caused it to reconsider the 1994 change. Thus, in 1997, the EPA modified the remedy to require installation of a well, or series of wells, and a treatment system within close proximity to the soil contamination.

2. *See* 42 U.S.C. §§ 9601(23), 9601(24).

jurisdiction is limited in CERCLA § 113(h), 42 U.S.C. § 9613(h), which provides in relevant part:

Timing of Review

No Federal court shall have jurisdiction under Federal Law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title [CERCLA] to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this [Act]. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

CERCLA § 113(h), 42 U.S.C. § 9613(h).[3] Thus, federal courts may not hear challenges to ongoing EPA remedial or removal measures unless the case meets one of the section 113(h) exceptions. When one of these exceptions applies, then the court has jurisdiction to review the EPA's CERCLA remedial or removal measures.

---

**3.** The terms "removal" and "remedial action" are defined terms under the CERCLA statute. *See* 42 U.S.C. § 9601(23), (24).

**4.** 42 U.S.C. § 9601(25) provides that the terms "respond" or "response" mean "remove, removal, remedy, and remedial action ...."

**5.** 42 U.S.C. § 9607(a)(4)(B) provides:
[A]ny person who accepts or accepted any hazardous substances for transport to disposal or

---

### A. *Count 1: Response Costs Under CERCLA § 107, 42 U.S.C. § 9607(a)(4)(B)*

Plaintiffs seek to recover their "response costs"[4] under CERCLA § 107, 42 U.S.C. § 9607(a)(4)(B). Plaintiffs seek alternate water for "current and future needs." Plaintiffs allege that these costs include but are not limited to the cost of providing an alternative water supply to replace the one which Private Defendants allegedly polluted.[5] Defendants argue that we do not have jurisdiction to entertain this claim.

CERCLA § 113(h)(1) provides federal jurisdiction "to review any challenges to removal or remedial action selected under section 9604 of [CERCLA], or to review any order issued under section 9606(a) of [CERCLA], in ... an action under section 9607 of [CERCLA] to recover response costs." 42 U.S.C. § 9613(h)(1). The statute defines "response costs" as those expended in,

[t]he cleanup or removal of released hazardous substances from the environment, ... [including] such actions as may be necessary to monitor, assess, and evaluate the release ..., the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for... and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for -

 \* \* \* \* \* \*

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

CERCLA § 101(23), (24), 42 U.S.C. § 9601(23), (24) (defining "removal" and "remedial" actions).

■ Costs for providing alternative drinking water as a result of a defendant's pollution are "response costs" within the meaning of the statute. *Adams v. Republic Steel Corp.*, 621 F.Supp. 370, 376 (W.D.Tenn. 1985) (finding that recovery for loss of use of wells for drinking water is a response cost within the meaning of CERCLA); *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1429 (S.D.Ohio 1984) (same); *see also Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 828 (5th Cir.1993); *Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir.1992). Thus, we have jurisdiction over Plaintiffs' claim for "response costs" insofar as it seeks costs for loss of use of wells for drinking water. Accepting for purposes of this motion the truth of these allegations and all reasonable inferences arising from them, we find that Plaintiffs sufficiently state a claim for response costs recognized by CERCLA. Plaintiffs allege that they have incurred and will continue to incur costs in securing and providing alternate drinking water for current and future needs at their properties as a result of Private Defendants' past and continuing releases of hazardous substances.

■ However, CERCLA does not recognize a claim to recover costs beyond those needed to make the Site safe for its current use. *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir.1995). We have no jurisdiction over Plaintiffs' claim to the extent that it seeks to recover costs beyond those that are presently "necessary" within the meaning of the Act. Thus, only Plaintiffs' claim for recovery of costs for drinking water to fulfill current needs is viable.

**B.** **Count 2: Citizens Suit Pursuant to CERCLA § 310(a)(1), 42 U.S.C. § 9659(a)(1)**

The second count is a citizens suit under CERCLA § 310(a)(1), 42 U.S.C. § 9659(a)(1).[6] Plaintiffs seek enforcement of the 1987 ROD, as modified in 1994, and administrative order 90302, as amended, which the EPA issued pursuant to CERCLA § 106. 42 U.S.C. § 9606(a). Defendants move to dismiss for lack of subject matter jurisdiction.

■ CERCLA § 310(a)(1) allows a citizens suit against any person who is alleged to be in violation of any standard, regulation, condition, requirement or order. CERCLA § 113(h)(2), 42 U.S.C. § 9613(h)(2), allows federal jurisdiction where the "action [is] to enforce an order issued under [CERCLA § 106(a), 42 U.S.C. § 9606(a)] or to recover a penalty for violation of such order." We find that the citizens suit in Count 2 satisfies the section 113(h)(2) exception insofar as Plaintiffs seek enforcement of the section 106 order that the EPA issued to Private Defendants requiring them to remedy the polluted groundwater.[7]

**C.** **Count 9: Citizens Suit Under CERCLA § 310(a)(2), 42 U.S.C. § 9659(a)(1)**

Plaintiffs bring a citizens suit against the EPA, pursuant to CERCLA § 310(a)(2), 42 U.S.C. § 9659(a)(1),[8] and the Administrative

---

6. 42 U.S.C. § 9659(a)(1) provides that any person may commence a civil action on his own behalf

 (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter.

7. CERCLA § 310(c) specifies the types of relief available to one bringing a citizens suit. That section provides in relevant part:

 The district court shall have jurisdiction in actions brought under subsection (a)(1) of this section to enforce the standard, regulation, condition, requirement, or order concerned ... to order such action as may be necessary to correct the violation, and to impose any civil penalty provided for the violation.
 42 U.S.C. § 9659(c).

8. CERCLA § 310(a)(2) provides for a citizens suit

 (2) against the President or any other officer of the United States (including the Administrator of the [EPA] and the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title

Procedure Act, 5 U.S.C. § 706. Plaintiffs complain that the EPA has failed to satisfy several CERCLA requirements. Specifically, Plaintiffs allege that the EPA has not selected remedies that adequately take into account the potency of the hazardous substances, pursuant to its obligations under 42 U.S.C. § 9621(b) and (d). Plaintiffs state that the EPA never implemented the selected "pump and treat" remedies of 1987 and 1994. Plaintiffs also allege that since 1987, when the EPA selected a remedial action for underground water, it has not conducted the required five-year review pursuant to 42 U.S.C. § 9621(c).[9] Plaintiffs ask this court to order the EPA immediately to conduct a five-year review of the Site; act upon the findings of the review; control the source of contamination by soil vapor extraction or similar technologies; and to extract and treat contaminated groundwater wells at the Site.

CERCLA § 113(h)(4) permits review of any challenges to removal or remedial action, and permits jurisdiction over certain citizens suits which allege that the removal or remedial action taken or secured was in violation of any CERCLA requirement. 42 U.S.C. § 9613(h)(4). Nevertheless, "[s]uch an action [still] may not be brought with regard to a removal where a remedial action is to be undertaken at the site." 42 U.S.C. § 9613(h)(4).

 Examining the plain language and legislative history behind this section, we conclude that there is no federal jurisdiction where a remedial action is still underway and has not yet been completed. In other words, no action may be brought under the citizens suit exception until the removal or remedial action is actually *taken*. We find Congress' use of the past tense to be a clear indication of its intention that citizens suits under section 310 take place only *after* the EPA removal or remedial actions are complete. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 108

L.Ed.2d 842 (1990) (stating that the "starting point for interpretation of a statute 'is the language of the statute itself.' ") (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)); *Arnold v. United Parcel Service*, 136 F.3d 854, 857 (1st Cir. 1998).

The legislative history confirms this conclusion that judicial review is to be delayed until "all the activities set forth in the Record of Decision for the surface cleanup phase have been completed." H.Conf.Rep. No. 962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.Code Cong. & Admin. News 2835, 3317. *See, e.g.,* H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 81, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2863 ("The section [113] is intended to codify the current position of the Administrator and the Department of Justice with respect to preenforcement review: there is no right of judicial review of the Administrator's selection and implementation of response actions until after the response action [sic] have been completed ...."); H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin. News 3045 ("Therefore, the Judiciary Committee amendment reaffirms that, in the absence of a government enforcement action, judicial review of the selection of a response action should generally be postponed until after the response action is taken."). Other courts examining this statute have reached the same conclusion. *See, e.g., Schalk v. Reilly*, 900 F.2d 1091, 1095–96 (7th Cir.1990) (holding that § 9613(h)(4) does not permit district courts to exercise jurisdiction over citizens suits challenging incomplete EPA remedial actions); *Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology*, 999 F.2d 1212 (8th Cir.1993) (same); *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1484 (9th Cir.1995) (same); *Alabama v. U.S. EPA*, 871 F.2d 1548, 1557–58 (11th Cir.1989) (same).

... which is not discretionary with the President or such other officer.
42 U.S.C. § 9659(a)(2).

**9.** The EPA is required to review all remedial actions that result in hazardous substances that remain on the site no less than every five years after the initiation of the remedial action in order to assure that human health and the environment are being protected by the remedial action being implemented. 42 U.S.C. § 9621(c); 40 C.F.R. § 300.430(f)(4)(ii).

This legislation is fueled by policy concerns that court proceedings not delay cleanups at their outset. *Clinton County Comm'rs v. U.S. EPA,* 116 F.3d 1018, 1023 ("Congress intended to preclude any judicial involvement in EPA removal and remedial actions until after such actions are complete.") (3d Cir. 1997) (*en banc*); *Wagner Seed Co. v. Daggett,* 800 F.2d 310, 315 (2d Cir.1986). As the First Circuit explained,

> Congress was no doubt concerned, first and foremost, that clean-up of substances that endanger public health would be delayed if EPA were forced to litigate each detail of its removal and remedial plans before implementing them. Thus, the Senate Judiciary Committee Report stated that § 9613(h) barred pre-enforcement review because such review "would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlement and voluntary cleanups."

*Reardon v. United States,* 947 F.2d 1509, 1513 (1st Cir.1991) (citing S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985)). In enacting section 113(h), "Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites." *United States v. Denver,* 100 F.3d 1509, 1514 (10th Cir.1996). In accordance with this goal, section 113(h) withholds federal jurisdiction to review any claim, including those made in citizens suits and under non-CERCLA statutes, that challenge ongoing CERCLA cleanup actions. *McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325, 329 (9th Cir.1995); *United States v. State of Colorado,* 990 F.2d 1565, 1577 (10th Cir.1993).

█ We find that, with the exception of the call for the five-year review, all of Plaintiffs' allegations in the citizens suit brought pursuant to section 310(a)(2) in count 9 are actually challenges to an ongoing response action which the EPA has taken within the meaning of section 113(h). Plaintiffs wish to require the EPA immediately to (1) initiate control of soil contamination by use of certain technologies, (2) initiate extraction and treatment of contaminated groundwater, and (3) conduct and act upon the findings of a remedy review. In order to provide this type of relief, we could not avoid interfering with the EPA's cleanup efforts and running afoul of the mandate of section 113(h) as evidenced in its language and policy. To this extent, Plaintiffs' section 310(a)(2) claim is, therefore, barred. Plaintiffs' identical demand sounding under the Administrative Procedure Act also lacks subject matter jurisdiction, since section 113(h) precludes "any challenges" to CERCLA removal actions, including those made in non-CERCLA statutes such as the Administrative Procedure Act. *See McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325, 329 (9th Cir.1995); *United States v. State of Colorado,* 990 F.2d 1565, 1577 (10th Cir.1993).

█ However, we find that Plaintiffs' request for a five-year review of the ongoing remedy does not constitute a challenge to the response action. Requiring the EPA to produce a five-year review in accordance with CERCLA § 121(c), 42 U.S.C. § 9621(c), would not affect the remedial action or unduly compromise the EPA's limited resources, in contravention of congressional policy behind section 113(h).

## V.

### *Count 10: Federal Torts Claim Act*

In Count 10, Plaintiffs seek recovery from the EPA under the FTCA for alleged injury to their water supply and real and personal properties. Plaintiffs allege that the EPA breached a duty of care to them by exercising inadequate oversight of the cleanup at Vega Alta and by failing to require the Private Defendants to comply with EPA orders and regulations. Furthermore, Plaintiffs maintain that the EPA's failure to comply with federal regulations constitutes actionable negligence per se and contributed to the alleged nuisance and trespass committed on the part of the Private Defendants.[10]

---

10. Specifically, Plaintiffs state that the EPA owes them a duty of care, among other things, to:

■ The United States, as sovereign, is immune from suit unless it consents to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The terms of its consent to be sued define the court's jurisdiction over that suit. *Id.* The government has waived its sovereign immunity pursuant to the FTCA and consents to be held liable only "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The government's waiver of immunity under the FTCA is "strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir.1988) (citing *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951)).

■ 28 U.S.C. § 1346(b) provides the jurisdictional component for a suit against the government. Section 1346(b) limits the government's potential liability to those torts committed by government employees acting within the scope of employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." *Id.; see Feres v. United States*, 340 U.S. 135, 141, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Chen v. United States*, 854 F.2d 622 (2d Cir.1988); *C.P. Chemical Co. v. United States*, 810 F.2d 34, 37 (2d Cir.1987). In other words, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary

elements of that comparable state cause of action." *Chen*, 854 F.2d at 626.

■ A breach of federal statutes, federal regulations, or of the United States Constitution is insufficient to maintain a claim under the FTCA. *Id.* (stating that "The FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution."); *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 100 (3d Cir.1986) (stating that the FTCA "law of the place" requirement is not satisfied by violations of federal statutes or regulations standing alone); *Art Metal—U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157–58 (D.C.Cir.1985) (same). This law of the place requirement means that a claim under the FTCA must have some private analog in state law. *Clemente v. United States*, 567 F.2d 1140, 1143 (1st Cir. 1977); *Myers v. United States*, 17 F.3d 890, 899 (6th Cir.1994) (stating that 28 U.S.C. § 2674 requires "some relationship between the governmental employee and the plaintiff to which state law would attach a duty of care in purely private circumstances"). The Fifth Circuit explained:

[T]he violation of a federal statute or regulation does not give rise to FTCA liability unless the relationship between the offending federal employee or agency and the injured party is such that the former, if a private person or entity, would owe a duty under state law to the latter in a nonfederal context. If the requisite relationship and duty exist, then the statutory or regulatory violation may constitute or be evidence of negligence in the performance of that state law duty.

*Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir.1995) (en banc).

■ Thus, the rule is that the government cannot be held liable under the FTCA "where the claimed negligence arises out of the failure of the United States to carry out a

---

(1) require the private defendants to comply with EPA orders and deadlines; (2) assure timely remedial responses are taken after EPA has found that time is crucial to protection of public health; (3) follow the standards established in law, regulation, EPA determinations and EPA standards; (4) ensure that plaintiffs are provided with adequate potable water; (5) warn plaintiffs of the true status of the Vega

Alta site, including the increased risk of harm created by the failure of EPA and other defendants to act properly; and (6) assure that sufficient information to assess the risk of harm is available to EPA, the public and to plaintiffs
. . . .

*See Docket Document No. 41, Second Amended Complaint, at ¶ 258.*

[federal] statutory duty in the conduct of its own affairs." *Johnson,* 47 F.3d at 727–28 (citation omitted); *see also Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157 (D.C.Cir.1985) (stating that "the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA."); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1091 (D.C.Cir.1980) (stating that "not every violation by the government of its regulations will give rise to an action under the Tort Claims Act."); *Sellfors v. United States,* 697 F.2d 1362, 1365–67 (11th Cir.1983) (violation of a federal regulation does not automatically invoke state law principles of negligence per se); *Schindler v. United States,* 661 F.2d 552, 560 (6th Cir.1981) (stating that "usually the federal regulatory statute is not the source of a private right of action"); *United Scottish Insurance Co. v. United States,* 614 F.2d 188, 194 n. 4 (9th Cir.1979) (stating that "the existence of a federal statutory duty does not of itself create a duty to be vindicated by the Act"), *aff'd after remand,* 692 F.2d 1209 (9th Cir.1982), *and rev'd on other grounds,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir. 1977) (stating "even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability"); *United States v. Smith,* 324 F.2d 622, 624–25 (5th Cir.1963) (stating that the FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs"); *Blessing v. United States,* 447 F.Supp. 1160, 1186 n. 37 (E.D.Pa.1978) (stating "plaintiffs may not base their claims on alleged breaches of a duty arising solely out of a federal law when there is no corresponding duty under state tort law"). This is because the FTCA, by its terms, does not create new causes of action but only provides for United States governmental liability in accordance with applicable local tort law.

 However, the government may be sued under the FTCA for failing in its federal statutory or regulatory duties when there is some detrimental justified reliance by the plaintiff upon the government carefully performing the task it undertook. For example, in *Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the United States Supreme Court found that the United States could be held liable under the FTCA for the Coast Guard's negligence in the operation of a lighthouse because the Coast Guard had undertaken a "Good Samaritan" duty to warn the public of danger and thereby induced reliance upon its careful performance. *Id.* The plaintiffs' detrimental justified reliance on the government carefully to perform its gratuitously undertaking instigated the government's liability under the FTCA. Nevertheless, since the key is justified, reasonable, detrimental reliance, "[w]e doubt that the Supreme Court in *Indian Towing* would have found liability if the government's negligence simply amounted to failing to construct a lighthouse as ordered by a Coast Guard official when the seafaring public was unaware that such an order had been given, and the lighthouse was never operational." *Zabala Clemente v. United States,* 567 F.2d 1140, 1148 (1st Cir.1977); *see also United States v. Union Trust Co.,* 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796 (1955) (government liable for negligence of air traffic controllers in light of pilots' justified reliance); *Rayonier v. United States,* 352 U.S. 315, 318, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (government liable for negligence in fighting fires on government land given reliance by the adjoining land owners; reliance was justified because the government expressly assumed the duty to fight fires originating on its land and "took exclusive direction and control" of all the firefighting efforts when fire broke out). In other words, if the government acts as a Good Samaritan and undertakes a duty, whether it be to monitor private cleanup of the environment, furnish a lighthouse service, or direct air traffic, it will be liable under the FTCA, insofar as a similarly-situated private enterprise would be liable under the local law or Good Samaritan rule if such action induced justified reliance. *Johnson v. Sawyer,* 47 F.3d at 728.

■ We find that the controversy here wholly concerns the EPA's alleged "failure to perform its regulatory functions vis a vis the Private Defendants who allegedly violated federal laws and rules," and that the EPA's regulatory duty to oversee and direct environmental cleanup under CERCLA does not give rise to a legal obligation sufficient to support a cause of action under the Federal Tort Claims Act. *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997). Congress has passed certain environmental laws for the purpose of protecting the environment and the public's enjoyment and use of the environment. Congress created the EPA and passed CERCLA in order to ensure compliance with those environmental laws. While the EPA and its regulatory scheme in this sense benefit the public, their purpose is to ensure compliance with environmental regulations. *See Myers*, 17 F.3d at 900.

■ We refuse to find that "by undertaking to monitor private parties' compliance with governmental [environmental] regulations, the government has assumed a duty of care towards the beneficiaries of those safety regulations such that it is liable for the negligence of its employees in the conduct of this monitoring." *Myers*, 17 F.3d at 901. We find that the EPA, by undertaking to monitor compliance with federal environmental regulations, and by subsequent alleged negligence in the course of that monitoring, has not worsened the harm to Plaintiffs and the Site. "The test is not whether the risk was increased over what it would have been if the defendant had not been negligent. Rather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all." *Myers*, 17 F.3d at 903. In other words, "plaintiffs must allege facts showing that the governmental actor affirmatively either made, or caused to be made, a change in the conditions which change created or increased the risk of harm." *Id.*

The EPA neither owed a duty of care to Plaintiffs nor induced detrimental justified reliance on the part of Plaintiffs. In light of this analysis, we find Plaintiffs have failed to state a claim under the FTCA.

## VI.

### Counts 3–8: Puerto Rico Law Claims Against Private Defendants

#### A. Count 3: Interference with Contracts

■ Puerto Rico law provides a cause of action for tortious interference by third parties with contractual obligations. *See* 31 L.P.R.A. § 5141 (1990). To state a claim for interference with contracts under Puerto Rico law, there must be: (1) a contract with which a third person interferes; (2) fault or knowledge of the contract's existence; (3) damage to the plaintiff; and (4) causation. *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1081–82 (1st Cir.1986) (citing *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 115 D.P.R. 553 (1984)). Plaintiffs have sufficiently alleged each of these elements in their complaint and state a claim for interference with contracts under Puerto Rico law. *See Docket Document No. 41, Second Amended Complaint, at ¶¶ 148–161.*

#### B. Count 4: Third–Party Beneficiary–of–Contracts Claim

■ Puerto Rico law recognizes a cause of action in favor of a third-party beneficiary to a contract. *See* 31 L.P.R.A. § 3374 (1990). Plaintiffs allege that they are intended third-party beneficiaries of contracts between Private Defendants and the government of Puerto Rico which provide for the protection of land owned by Plaintiffs. Plaintiffs allege that Private Defendants' releases of hazardous substances and failure to respond to that pollution at the Site was a breach of these contracts. Plaintiffs maintain that as a proximate result of Private Defendants' violation of its contractual obligations with the government of Puerto Rico, their properties have been damaged. We find that Plaintiffs have adequately stated a cause of action as third-party beneficiaries to a contract. *A.L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 D.P.R. 104, 1964 WL 14359 (1964).

#### C. Counts 3, 5–8: Statute of Limitations Defense By Motorola and Unisys

Defendants Motorola Electronic de Puerto Rico, Inc., Motorola International Develop-

ment Corporation (jointly, "Motorola") and Unisys Corporation defend that Count 3 (interference with contract), Count 5 (negligence), Count 6 (nuisance), Count 7 (trespass), and Count 8 (strict liability) are all time-barred by the one-year statute of limitations for torts provided by Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5298. The Puerto Rico Code provides a one-year statute of limitations for "Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in Section 5141 of this title [Civil Code Article 1802]." 31 L.P.R.A. § 5298 (1990).

Only Defendants Motorola and Unisys join in this defense. The other Private Defendants have not raised any arguments regarding the dismissal of Counts 5–8, though they note that they do not waive any statute of limitation defense. Thus, the final issue we examine in this order is the whether Counts 3 and 5–8 are time-barred as to Defendants Motorola and Unisys.[11]

Motorola states that the companies for whose actions Plaintiffs seek to hold it liable ceased operations at Vega Alta in 1983, and never owned or leased property at the Site thereafter. Unisys states that it ceased operations at Vega Alta in 1964, and never owned or leased property at the Site thereafter. Motorola and Unisys both maintain that Plaintiffs had knowledge that they were being injured as a result of the alleged contamination since 1984 at the latest. Motorola and Unisys point to Plaintiffs' allegations that tests of public drinking water supply wells indicated elevated levels of TCE as early as 1983, and that in 1984, the EPA determined that some of the other wells on the property were unusable because of unsafe levels of TCE. Motorola and Unisys argue that no later than September 1988 did Plaintiffs have knowledge of the specific identity of the entities that the EPA believed were responsible

for the contamination because it was then that the EPA issued Administrative Order II–CERCLA–80217 directed to Caribe GE, Motorola Telcarro, Harman, West, and PRIDCO. Thus, Motorola and Unisys argue that the torts began to accrue by September 1988, since that is when that Plaintiffs had notice of injury and notice of the person who caused it. In other words, Motorola and Unisys argue that Counts 3–8, for which there is only a one-year statute of limitations, began to accrue almost nine years before filing suit and are, thus, time-barred. Plaintiffs argue that the statute of limitations has been tolled because these are "continuing torts" under Puerto Rico law.

 Generally, the statute of limitations begins to run from the time the aggrieved person had notice of the injury and notice of the person who caused it. *Colón Prieto v. Geigel,* 115 D.P.R. 232, 247 (1984); *see also Rosado Serrano v. E.I. Dupont de Nemours & Co.,* 797 F.Supp. 98, 102 (D.P.R. 1992). However, in the case of a continuing tort, the statute of limitations is tolled as the tort is constantly recurring. The dispute here arises from Plaintiffs' and Defendants' differing opinions regarding the meaning of a "continuous tort" under Puerto Rico law.

Defendants state that under Puerto Rico law, a "continuing tort" is *conduct* that is ongoing, not a harm that is ongoing, and that they have not committed any affirmative act in nine years. Plaintiffs maintain that continuing harm suffices to establish a continuing tort. Plaintiffs state they have continuing nuisance and trespass claims because Motorola and Unisys' pollutants continue to flow gradually from their original source onto Plaintiffs' properties, and Defendants continue to violate their legal duties to stop and clean this pollution.

Plaintiffs maintain that they are suffering new and recurring injuries as new pollutants continue to enter their property causing new

**11.** Since the other Private Defendants, Caribe General Electric Products, Inc., General Electric Company, West Company of Puerto Rico and West Company, Inc. do not join in the statute of limitations defense for Counts 3 and 5–8 and do not raise any other arguments regarding Counts 5–8, we do not consider dismissal of those counts as to these four Private Defendants.

Defendants Motorola and Unisys state at the outset that the statute of limitations defense applies to Count 3 and Counts 5–8, but they address their argument mainly to Counts 6 and 7. To the extent statute of limitations argument relates to Counts 3, 5 and 8, we do not find it persuasive and decline to dismiss those counts as time-barred.

damages. In other words, as each harmful molecule "enters" the property, another nuisance and trespass is committed. Plaintiffs distinguish their circumstances from those cases Defendants cite where landowners are continuing to suffer damage from the ongoing effects of pollutants dumped years ago. In those cases, courts have consistently held that the cause of action accrued from the time of the tortious act despite the ongoing harmful effect of that act. *See, e.g., Sable v. General Motors Corp.,* 90 F.3d 171, 176–77 (6th Cir.1996); *Montana Pole & Treating Plant v. I.F. Laucks & Co.,* 993 F.2d 676, 680 (9th Cir.1993).

 We find a "continuous tort" under Puerto Rico law is ongoing unlawful conduct, not a continuing harmful effect. *Arcelay v. Sanchez,* 77 D.P.R. 824, 838 (1955) (stating that a continuing nuisance depended on the continuing and ongoing character of the cause or act which originated the nuisance and therefore continually renewed the wrongful act). Plaintiffs' distinction regarding the continuous conduct here is simply specious. For there to be a continuous tort, Defendants must be continuously acting, i.e., continuing to dump pollutants on Plaintiffs' land. Defendants are not continuously acting when the pollutants entering the land are doing so without any further impetus on the part of the Defendants beyond that committed in 1988. We find unpersuasive the argument that the pollutants' constant entry onto the land is a continuing act when the entry takes place despite no further action by the Defendants. Defendants must be continuously acting for there to be a continuing tort. While the pollutants may constantly enter Plaintiffs' property, since the pollutants themselves are not Defendants, their constant action (reentry) is not a continuous action on the part of the Defendants. Defendants only ignited the catalyst. The allegation that their acts committed in 1988 and earlier provoked constant ramifications is insufficient to establish a continuous tort.

 This is, therefore, another case where a tortfeasor commits an illegal act and the plaintiff feels the continuing harmful effect of this act. Under such circumstances, Puerto Rico courts, as well as courts of other jurisdictions, have consistently held that the continuing harmful effect of the original tort does not constitute a continuing tort for purposes of tolling the statute of limitations. *Capella v. Marquez,* 57 D.P.R. 258, 266 (1940); *Bonilla v. Trebol Motors Corp.,* 913 F.Supp. 655, 659 (D.P.R.1995) (stating "in order to establish a continuing tort violation, codefendants necessarily must prove that plaintiffs engaged in a series of tortious acts. It is irrelevant whether the harm allegedly caused by the tortious acts continues"); *Lazarini v. United States,* 898 F.Supp. 40, 45 (D.P.R.1995), *aff'd,* 89 F.3d 823 (1st Cir.1996) (stating that "in order to establish a continuing tort violation, a plaintiff necessarily must prove a series of events, not that the injury from the first events has not been cured").

We find that the statute of limitations has not been tolled. Accordingly, we dismiss Plaintiffs' nuisance claim (Count 6) and trespass claim (Count 7) only against Defendants Motorola and Unisys, as time-barred by the one-year statute of limitations. 31 L.P.R.A. § 5298 (1990).

## VII.

### *Conclusion*

In light of the above analysis, we find that Plaintiffs have stated a claim in count 1 for response costs under CERCLA § 107 to the extent they seek to recover for the cost of providing alternative water to satisfy current usage. We find we have subject matter jurisdiction over count 2, Plaintiffs' citizens suit, CERCLA § 310(a)(1), in light of CERCLA § 113(h)(2), insofar as Plaintiffs seek enforcement of the section 106 EPA order to Private Defendants. We do not have subject matter jurisdiction over count 9, Plaintiffs' citizens suit, CERCLA § 310(a)(2), since Plaintiffs' claims are a challenge to an ongoing EPA response action. However, Plaintiffs' request for the EPA to conduct a five-year review as it is statutorily required is not a challenge within the meaning of the Act and we, therefore, order the EPA to act in accordance with CERCLA § 121(c).

Plaintiffs have failed to state a claim in count 10 against the EPA under the FTCA. Plaintiffs have satisfactorily stated claims

against all Private Defendants for counts 3–8; except with respect to Defendants Motorola and Unysis, counts 6 and 7 are time-barred.

**IT IS SO ORDERED.**